## NOAH ALLEN v. LUMAN A. DREW.

### Water Rent. Tax. Municipal Corporation. Burlington City Charter.

A warrant for the collection of water-rents assessed against a person owning lots in the city of Burlington, signed by the city treasurer and issued under the amended charter approved November 19, 1868, is valid, notwithstanding the act authorizing the assessment was approved seven days before the amended charter was approved.

The act providing for such assessment, by apportionment of the burden according to the extent of frontage of lots abutting on the course of the aqueduct, is not in violation of the constitution.

A municipal corporation may be authorized to make a local and special tax or assessment for the building of sewers, sidewalks, drains and aqueducts, and apportion the expense according to the benefits received.

Levying such local assessments is not taking private property "for public use" under the right of eminent domain, but is the exercise of the right of taxation inherent in every sovereign state.

The power of taxation implies apportionment. And when the legislature have exercised the right and made the apportionment, a court should not assume to declare it void, unless the invasion of private right was flagrant and its demonstration clear.

*Non dubitatur* that a local assessment may so transcend the limits of equality and reason that its exaction would cease to be a tax or contribution to a common burden, and become extortion and confiscation. In that case it would be the duty of the court to protect the citizen from *robbery* under color of a better name.

REPLEVIN of one bale of buffalo robes. The defendant filed an avowry, justifying the taking, to which the plaintiff filed a general demurrer. The court at the April term, 1871, PIERPOINT, C. J. presiding, *pro forma*, sustained the demurrer, and held the avowry insufficient, and rendered judgment for the plaintiff for one cent damages and his costs; to which judgment the defendant excepted.

The facts as set forth in the avowry are briefly these :

1st. That the city owned the water-works, for the purpose of supplying the city and its inhabitants, and the owners of real estate, with water, for which it had issued a large amount of interest bearing bonds, and that the plaintiff was the owner of real estate situated on certain streets through which the pipes of said works were located.

2. That the city, having been fully authorized by its charter so to do, had extended the aqueduct of said water works along the

streets for the purpose of conveying the water of said water-works through the same, and of supplying the city and the inhabitants residing along the streets, and the owners of lots and buildings adjoining thereto, with water. That the plaintiff owned divers lots, and buildings, on said streets as aforesaid, abutting upon and located near said aqueduct, and in such position that the same could be supplied with water from said aqueduct, particularly describing the streets, and the plaintiff's said lots and buildings.

3d. That the act of the legislature of November 12th, 1868, acts of 1868, pp. 92–3, duly became a law, as provided in said act.

4th. That pursuant to said act the city council established rates of annual rents as stated in the opinion, to be paid for the supply of water by the owners of lands abutting on the water-pipes, and that the city council made out a list of such rates in the manner required by said act, and that the plaintiff's real estate was assessed on each foot of frontage on the streets, in the whole $80.72, and that said list was delivered to the city treasurer for payment according to law.

5th. That the treasurer on the 6th day of July, 1869, gave notice, as required by law, that said rents had been assessed, that the list had been delivered to him and that in case of non-payment, as required by said act, said list would be delivered to the constable for collection ; that the plaintiff neglecting to pay said tax, a warrant to collect the same was issued by the treasurer September 14th, 1869, and delivered to the defendant, who was constable of the city, for the tax $80.72, with 5 per cent. added, $4.036, and 25 cents for the warrant, in all $85.01, and the plaintiff refusing to pay said amount on demand, the defendant distrained and took the robes in question, for the purpose of selling the same to satisfy said warrant. That on the 19th day of October, 1869, he duly advertised the same to be sold on the 25th day of the same month, by posting a notice at the city hall, a public place, and that on the 21st of October, 1869, the writ in this case was served, and the robes replevied.

*Wales & Taft,* for the defendant. The power of the legislature and the authority of the city under the charter and the general statutes, with the facts alleged in the avowry, constitute a full defence to the action. § 20, acts of 1864, p. 118 ; *Van Sicklen et al.* v. *Burlington et al.,* 27 Vt., 70 ; *Hardy* v. *Waltham et al.,* 3 Met., 163.

The legislature by the act of November 12th, 1868, gave the city council power to establish the taxes in question. Session Laws of 1868, pp. 92–93. Can the validity of this act be successfully questioned ? The only respect in which it differs from any of our modes of general taxation is, that it allows local taxation for local benefits, (section 2), and we maintain that the legislature has full power to authorize a municipal corporation to assess the expenses of maintaining local improvements, (as *grading, curbing, paving, sewers, culverts, and laying water-pipes,*) on the property benefited, and this mode of constructing and maintaining such improvements has been sanctioned by long usage here and elsewhere. *Dorgan* v. *Boston,* 12 Allen, 223 ; *Nichols* v. *Bridgeport,* 23 Conn., 203 ; *Gillette* v. *Hartford,* 31 Conn., 356 ; *Clapp et al.* v. *Hartford,* 35 Conn., 66 ; *People ex rel. Griffin* v. *Brooklyn,* 4 Coms., 419 ; *Hoyt* v. *Saginaw,* 19 Mich., 39 ; *Schenley and wife* v. *Alleghany,* 25 Penn., 128 ; *Commonwealth* v. *Woods,* 44 Penn., 113 ; *Greensburg* v. *Young,* 53 Penn., 280 ; *Hammett* v. *Philadelphia,* 65 Penn., 146. This is not an attempt to take property by virtue of the right of eminent domain, but the exercise of the sovereign power of taxation. *Nichols* v. *Bridgeport,* 23 Conn., 205 ; *People* v. *Brooklyn,* 4 Coms., 419 ; *Williams* v. *Detroit,* 2 Mich., 560 ; Cooley's Cons. Lim., 496. The power to tax implies a power to *apportion* the tax as the legislature see fit, and the power of apportionment has no limit where there is no constitutional restraint. *People* v. *Brooklyn,* 4 Coms., 419, 426 ; and see *Armington et al.* v. *Barnet et als.,* 15 Vt., 749 ; Cooley's Cons. Lim., 505–6. There is nothing in our State constitution prescribing the mode or manner of taxation, requiring it to be either equal or uniform. The general statutes permit the assessment in a different manner. § 2, chap. 84. Every presumption is to be made in favor of the right of taxation. *Hammett* v. *Philadelphia,* 65 Penn., 155. As to the unlimited nature of the power to impose taxes, see Cooley's Cons. Lim., 479, 495, 514. There must be taxing districts, and it is within these that this rule obtains. *Gillette* v. *Hartford,* 31 Conn., 353 ; *Williams* v. *Detroit,* 5 Mich., 571. About the only questions that can be raised upon the imposition of a tax by the legislature are : a. Is the purpose

for which such tax is raised a public one ? b. Should the burden be borne by the district upon which it is imposed ?

Upon the point that this taxation is unequal and singles out a particular class of citizens, to wit, landowners, and imposes the duties exclusively on them, see *Goddard's Case*, 16 Pick., 509. There are five modes in which money can be raised for burdens similar to the erection of water-works : 1st. By general taxation on the whole municipality. 2d. By taxation in such sums as the property may have been respectively benefited. 3d. By taxation upon the amount of frontage of each land-owner. 4th. By specific charges for the use of water. 5th. By taxation of the area or value of the lands fronting on the water-pipe.

The one in question is the most just and equitable of all, and complies more fully than any other with the rule that taxation should be uniform.

The proceedings of the city council are in conformity to the statute. *Powell* v. *Madison*, 11 Ind., 335 ; cited 24 U. S. D. 600. The only question that appears to be new is the manner of taxing by the front foot, and this we claim was valid and well sustained by decisions : *Lowell* v. *Hadley*, 8 Met., 180 ; *Com.* v. *Woods*, 44 Penn., 116 ; *Magee* v. *Pittsburgh*, 46 Penn., 358 ; *Hammett* v. *Philadelphia*, 65 Penn., 151 ; *Williams* v. *Detroit*, 2 Mich., 571 ; Cooley's Cons. Lim., 506, note, and 507.

No objection can be made to the addition of five per cent. to the tax upon the issuing of the warrant, and twenty-five cents for the warrant, or to either of them. *The People* v. *Todd*, 23 Cal., 181 ; *Louisville City R. R. Co.* v. *Louisville*, 4 Bush (Ky.) Rep., 478 ; *Cheever* v. *Merritt et al.*, 5 Allen, 563 ; *Supervisors of Milwaukee County* v. *Hackett*, 21 Wis., 613 ; *Roseberry* v. *Haff*, 27 Ind., 12.

*C. J. Alger* and *R. C. Benton*, for the plaintiff.

The proceedings set out in the avowry were not in accordance with the act of the legislature under which the city officers claimed to act. This act was approved November 12, 1868. Session Laws, 1868, p. 92. The proceedings were in accordance with

the provisions of an act approved November 19, 1868. Session Laws, 1868, p. 95. That act cannot by any construction be the one referred to as the amended charter of said city, because at the date of the passage of the water act, there was no such amended charter in existence.

Again, as the law stood November 12, 1868, there was no provision in force allowing the addition of the five per cent. penalty.

The water rents provided for by this act are not taxes in such a sense that they are affected by general provisions respecting the collection of taxes. They are denominated rents in the act.

Legislation with respect to taxation generally does not refer to cases of local assessments, and consequently the change in the manner of collecting city taxes in Burlington, made by the law of November 19, 1868, does not apply to the collection of water rents provided for by the act of November 12, 1868. *Northern Liberties* v. *St. John's Church*, 13 Penn., 104. *In re* Mayor &c., New York, 11 Johns., 80 ; *Lockwood* v. *St. Louis*, 24 Mo., 40 ; *People ex rel. Griffin* v. *Mayor, &c. Brooklyn*, 4 Comstock, 419 ; *Dergan* v. *City of Boston*, 12 Allen, 235 ; *Hill* v. *Higden*, 5 Ohio, N. S., 243 ; *Palmer* v. *Stumph*, 29 Indiana, 329 ; *Lumsden* v. *Milwaukee*, 8 Wisconsin, 485 ; *Williams* v. *Detroit*, 2 Michigan, 560 ; *Yeatman* v. *Crandall*, 11 La. An., 220 ; *McGehee* v. *Matthis*, 21 Ark., 40.

There is another particular in which the provisions of the water act have not been complied with. The act provides in the first section that

" The city council of Burlington shall establish rates of annual rents to be charged, and paid annually for the supply of water, by means of the city water works, or for the benefits resulting therefrom, to be called water-rents, and apportioned to the different classes of buildings in said city within the limits herein after mentioned, in reference to their dimensions and uses for hotels, factories, furnaces, steam-engines, dwellings, stores, shops, livery and private stables, and other common purposes, and to vacant lots, as near as may be practicable."

The city council did not make such an apportionment as the act provides for. It was their duty in the first place to make the apportionment to the different classes of buildings. This was not

done at all. They make no distinction of classes of buildings in any sense. Next, they were required to make apportionment with reference to their dimensions. This they have done in part. They have apportioned the rates to the front foot, and to the number of stories. This cannot be deemed a compliance with the law.

Further, the act requires the rates to be apportioned to the uses of the buildings. This is not attempted.

Again, it is required that the rates be. as nearly as practicable in proportion to the benefits conferred. This is not done. All the ordinance purports to do in the way of apportionment, as stated in the avowry, is this apportionment:

" For buildings of one story, twelve cents per front foot. For buildings of two stories, sixteen cents per front foot. • For vacant lots, eight cents per front foot."

This is no immaterial omission. It is to be borne in mind that this assessment in no way relieves the property from other taxes. It is imposed in addition to the plaintiff's full share of the ordinary expenses of the city, and after the right of taxation had, as to him, been exhausted. It is, to be sure, called water-rent, but it is rent without tenancy. The plaintiff has no election whether or not he will be subject to the rental. It is imposed on him without his consent, and enforced by summary process from which there is no appeal, in which the summons is not only final execution, but also complaint, warrant, judgment, and execution for a penalty, all in one. It is not only a lien and charge upon the property assessed, but, as in this very case, reaches his goods and his body itself. It is a process so sweeping that nothing but death can relieve him from it. Now if for such proceedings as this there can be a justification, it must be found in the benefits conferred. The assessment must be based on these benefits, and consequently apportioned to them. The legislature has made some provisions for such apportionment. These were material and indispensable provisions. Without them the law itself would have been unconstitutional. In these respects the ordinance of the city council has failed to comply with the law. It must, therefore, be held invalid. From the whole act it is very doubtful whether

the legislature ever intended that rents should be collected except where there were uses.

If these objections can all be ·overcome, and the law can be so construed as to cover the proceedings set out in the avowry, we insist that upon such construction the law itself is unconstitutional and void.

Although our State constitution does not in express terms limit the taxing power of the legislature as do the constitutions of many other States, it does not on the other hand make any express grant of the power to levy taxes. That power must be inferred from the grant of supreme legislative power, and considered as one of the items of which that grant is the aggregate. The right to' levy taxes so derived is not an arbitrary, unlimited power; but is affected with the qualification that taxation must be a fair and equal apportionment of·the burdens of the government, upon all its subjects. If the burdens are arbitrarily imposed upon part only of the subjects, or are not justly apportioned between them, then the imposition is not taxation, but extortion. The power of extortion is not granted by our constitution — either expressly or by implication. 2 Kent's Com., 331; Cooley's Constitutional Lim., 495.

There is no case to be found in this State, nor, as it is believed after a very thorough research, in any other, — with limitations in the constitution, or without them, — in which it has been held that a legislature, by virtue merely of its general powers, can levy — or authorize a municipality to levy — a local tax for general purposes. It may be shown logically, — and that without difficulty, — that such a doctrine lands us in this absurd proposition: That the whole expenses of government, general and local, may be laid on the shoulders of one man, if one could be found able to bear such a burden. *Lexington* v. *McQuillian's Heirs*, 9 Dana, 513; *Sherwood J. Hammett* v. *Philadelphia*, 8 Law Reg., 411; *Sharpless* v. *The Mayor of Philadelphia*, 9 Harris, 168·; *Tidewater Co.* v. *Caster*, 3 C. E. Green, 518.

There is a view very prevalent, that legislatures have supreme power to do everything not expressly forbidden by constitutional

provisions.   This is far from being true of American legislation;
but if it were so, then the views we claim would be sound.   It is
a universal constitutional maxim, that private property shall not
be taken for public use without compensation.   *Bradshaw* v. *Rog-
ers*, 20 Johns., 106; *People* v. *Platt*, 17 Johns., 315; *Gardner*
v. *Newburgh*, 2 Johns. Ch., 160; *Bonaparte* v. *C. & A. R. R.
Co.*, Baldwin, C. C. Rep., 43; 3 Story's Com., 661; *Young* v.
*McKinney*, 3 Kelly, 43.

When taxation is justly apportioned, and each citizen pays only
his fair proportion of the public burdens, then he receives com-
pensation in protection to his person and property.   When taxa-
tion is not so apportioned, then it is a taking of the money or
property of the citizen, without compensation, and is obnoxious
to this constitutional principle.

All the dicta of judges and best writers to the effect that the
power of legislatures over taxation is uncontrollable, will on
careful scrutiny be found to come from a misapprehension of the
effect of the language of Judge Marshall, in the great bank case,
*McCulloch* v. *Maryland*.

It follows that the imposition of water-rates or assessments on
the particular property adjacent to the streets through which these
water-pipes were laid, could not be justified as a means of raising
revenues to meet the general expenses of the city.   That would
be imposing a general burden on part of the property of the city.
Such legislation has in numerous cases been uniformly held uncon-
stitutional.   *Weeks* v. *Milwaukee*, 10 Wis., 242; *O'Cane* v. *Treat*,
25 Ill., 557; *Philadelpeia Association* v. *Wood*, 39 Penn., 73;
*Sacramento* v. *Crocker*, 17 Cal., 119; *McComb* v. *Bell*, 2 Minn,
295; *Gilman* v. *Sheboygan*, 2 Black, 510.

The first case in which the constitutional discussion attracted
much attention was that of *The People ex rel. Post* v. *Mayor, etc.,
of Brooklyn*, 6 Barbour, 209, which was decided in 1848.   In
that case, the whole theory of local assessments was pronounced
unconstitutional.   Other decisions to the same effect were had in
other States.   *Municipality No. 2* v. *White*, La. An., 447; *Cum-
mings* v. *Police Jury of Rapids*, La., 503; *Creighton* v. *Manson*,
27 Cal., 614.

In New York this was reversed by the court of appeals, in the great case of *People ex rel. Griffin* v. *Mayor, etc., of Brooklyn,* 4 Comstock, 419.

The following-named cases will be found to treat of this subject, though not all of the constitutional question : *Matter of Fourth Avenue,* 3 Wendell, 452 ; *Matter Albany st.,* 11 Wendell, 149 ; *Matter Canal st.,* 11 Wendell, 154 ; *Matter William and Anthony st.,* 19 Wendell, 678 ; *Canal Bank* v. *Mayor, &c., Albany,* 19 Wendell, 244 ; *Matter of Flatbush Avenue,* 1 Barb., 286 ; *Matter Mayor, &c., New York,* 11 Johns., 77 ; *Sharp* v. *Spin,* 4 Hill., 76 ; *Livingston* v. *Mayor New York,* 8 Wendell, 85 ; *Matter of Farman st.,* 17 Wendell, 649 ; *Matter of New York, &c., Scheve,* 31 New York, 574 ; *People* v *Lawrence,* 36 Barb., 177 ; *People ex rel. Post* v. *Mayor Brooklyn,* 7 Barb., 209 ; *People ex rel. Griffin* v. *Mayor Brooklyn,* 4 Coms., 419 ; *Nichols* v. *Bridgeport,* 23 Conn., 189 ; *Northern Liberties* v. *St. John's Church,* 13 Penn., 107 ; *Schenley* v. *City of Alleghany,* 25 Penn. st., 128 ; *Mayor* v. *Commonwealth,* 46 Penn., 358 ; *Wray* v. *Mayor, &c., Pittsburgh,* Penn., 365 ; *State* v. *Dean,* 3 Zab., 335 ; *State* v. *Mayor, &c., Jersey City,* 4 Zab., 662 ; *Scoville* v. *City of Cleaveland,* 1 Ohio N. S., 127 ; *Bonsal* v. *Lebanon,* 19 Ohio O. S., 518 ; *Hill* v. *Hogdon,* 5 Ohio, N. S., 243 ; *Marion* v. *Epler,* 5 Ohio, N. S., 250 ; *Ernst* v. *Kunkle,* 5 Ohio, N. S., 520 ; *Northern Ind. R. R. Co.* v. *Connelly,* 10 Ohio, N. S. 159 ; *Reeves* v. *Treasurer Wood Co.,* 8 Ohio N. S., 333 ; *Maloy* v. *Marietta,* 11 Ohio N. S., 636 ; *Williams* v. *Detroit,* 2 Mich., 560 ; *Le Fevre* v. *Detroit,* 2 Mich., 586 ; *Woodbridge* v. *Detroit,* 8 Mich., 274 ; *Mons* v. *Detroit,* 18 Mich., 495 ; *Palmer* v. *Stumple,* 29 Ind., 329 ; *City of Lexington* v. *McQuillian's Heirs,* 9 Dana, 513 ; *Malchin* v. *District of Highlands,* 4 Bush, 547 ; *McBride* v. *Chicago,* 22 Ill., 357 ; *City of Chicago* v. *Larned,* 34 Ill., 203 ; *City of Ottawa* v. *Spence,* 40 Ill., 211 ; *City of Peoria* v. *Kidder,* 26 Ill., 357 ; *Bedard* v. *Hall,* 44 Ill., 91 ; *Lumsden* v. *Goss,* 10 Wis., 282 ; *Weeks* v. *Milwaukee,* 10 Wis., 242 ; *Soens* v. *City of Racine,* 10 Wis., 275 ; *Lumsden* v. *Milwaukee,* 8 Wis., 485 ; *State ex rel. Christopher* v. *City of Portage,* 12 Wis., 562 ; *Bond* v. *City of Kenosha,* 17 Wis., 284 ; *Burns et als.* v. *Mayor, &c., Atchinson,*

2 Kan., 454; *Hines* v. *Leavenworth*, 3 Kans., 186; *Lockwood* v. *St. Louis*, 24 Mo., 40; *Egyptian Levee Co.* v. *Handin*, 27 Mo., 495; *St. Joseph* v. *O'Donaghue*, 31 Mo., 345; *St. Joseph* v. ――― ―――, 31 Mo., 347; *McGehee* v. *Malthis*, 21 Ark., 40; *Yeatman* v. *Crandall*, 11 La., an. 220; *In re. New Orleans Draining Co.*, 11 La., an. 338; *Wallace* v. *Shelton*, 14 La., an. 495; *State* v. *Merchants' Ins. Co.*, 12 La., an. 802; *Richardson* v. *Morgan*, 16 La., an. 429; *In re. New Orleans*, 20 La., an. 497; *Burnett* v. *Sacramento*, 12 Cal., 477; *Creigeton* v. *Manson*, 27 Cal., 614; *Emery* v. *San Francisco Gas Co.*, 28 Cal., 346; *Emery* v. *Bradford*, 29 Cal., 75; *Lowell* v. *Oliver*, 8 Allen, 247; *In re. Dorrance St.*, 4 R. I., 255; *Dorgan* v. *City of Boston*, 12 Allen, 223; *Methodist Church* v. *Mayor, &c., Baltimore*, 6 Gill, 391; *Case of the County Sec'y*, 5 Call. (Va.), 139; *Lockhart* v. *Harrington*, 1 Hawks (N. C.), 408; *Winn* v. *City Council Macon*, 21 Geo., 275; *Stern* v. *Mayor, &c., Mobile*, 24 Ala., 591; *Williams* v. *Cammack*, 27 Miss., 219; *Nichol* v. *Naihorlls*, 9 Humph., 252; *Tidewater Co.* v. *Carter*, 3 C. E. Green, 518; *Commonwealth* v. *Words*, 8 Wright, 113; *Pennock* v. *Hoover*, 5 Rawle, 291; *City* v. *Weston*, 11 Cary, 427; *Hammett* v. *Philadelphia*, 8 Law Reg., 44.

In the earlier cases on the subject, a good deal of trouble was found as to the source from which this power came. Some claimed it to be an exercise of the right of eminent domain; others referred it to the police power; but the matter is finally settled to be an exercise of the taxing power.

Another objection to the law authorizing these water-rates is that there is no provision in it that the amount of the assessments shall not exceed the cost of the special improvement.

A further objection is found in the fact that there is no provision that the amount of the assessment does not exceed the amount of the benefit. There has never been any assessment sustained which had not in some way such provisions.

There is no attempt made to limit the amount of these water-rates. They are left entirely in the discretion of the city council. Such unlimited authority is not consistent with the requirements of the constitutional principles relating to the subject. The leg-

islature cannot delegate or entrust to the city council of Burlington the duty of guarding against infringements of organic law. The right of the legislature itself to impose assessments is affected with limitations, and its duty is to observe them. Even if this duty could be properly entrusted to the city council, it does not appear that it has been performed. This is a summary final proceeding against the person, as well as the property, of the plaintiff: not in the ordinary course of taxation, but standing on exceptional grounds. Such proceedings are to be strictly construed. It should either appear affirmatively that all the constitutional limitations have been observed, or else such facts should be shown as would show it with certainty.

Several of the decisions above quoted on this subject concur in the enunciation of principles from which it will follow that a plea — that in fact, in the particular instance in question, the amount of the assessment was greater than the special benefit—would be a bad defense to a local assessment. This is upon the ground we have just stated: that the legislature having made special provisions, calculated to secure these results, it is not competent for the courts to revise these proceedings, any more than in an action for a tax, or on proceedings to enforce its collection, the court could inquire whether the listers had made a just appraisal of complainant's property. On this point see *Wray* v. *Pittsburgh*, 46 Penn., 365; *Magee* v. *Commonwealth*, 46 Penn., 358; *N. Ind. R. R. Co.* v. *Connolly*, 10 O., N. S., 159.

The opinion of the court was delivered by

REDFIELD, J. This action was replevin for a bale of robes, taken by the defendant, as constable and collector, upon a warrant and rate-bill for " *water-rents*," in the city of Burlington.

The defendant, in his avowry, avers in justification of the taking of the property, that plaintiff was the owner of several houses and vacant house-lots in said city; that the city, having been fully authorized by its charter so to do, had extended water-pipes along the streets upon which the plaintiff's lots abutted; that the city, by ordinance, under the act of the legislature, approved November 12th, 1868, prescribed and established " rates of annual rents, to

be charged to, and paid by, the owners of lots and buildings adjoining any street or avenue in said city in which the aqueduct of its water-works was then, or thereafter might be, laid, and from which such lots and buildings could be supplied with water, to wit: buildings one story, twelve cents per front foot; for buildings of two stories, sixteen cents per front foot; for vacant land, eight cents per front foot." That under such act of the legislature and city ordinance, the plaintiff was assessed $80.72; that after due notice, and refusal to pay, the tax was duly committed to the defendant for collection, under a warrant therefor, signed by the city treasurer. The plaintiff refused to pay the assessment, and the defendant seized the bale of robes in satisfaction of the same, upon said warrant. And while the defendant was proceeding with the sale, the property was taken from his possession by virtue of this writ of replevin.

I. The plaintiff claims that the warrant is invalid, in that it was signed by the treasurer, and issued under the amended charter, approved November 19th, 1868: while the act authorizing the assessment, approved November 12, 1868, provides that " the same proceedings shall be had thereon by said *treasurer*, and the *constable* of said city, in respect to the collection of said water-rents, *as is, by the amended charter of said city, provided for the payment and collection of city taxes.*" This amended charter, under which the proceedings were had, was not approved until the 19th of November, seven days afterwards. So that, strictly speaking, *this* " amended charter " did not exist as a law at the time the act providing for these assessments took effect.

It is not claimed by the plaintiff that there is any *other* " amended charter " providing for the " assessment, payment, and collection of taxes."

The two acts were pending before the legislature at the same time, and there is no violence in the presumption that the act *last* approved may have been *first* introduced and first have passed one branch of the legislature. Besides, there is evidence on the face of the acts, that one refers to the other. And, we think, from the language of the act, and by just intendment, the legislature intended that the water-rents should be paid and the collec-

tion enforced by the "*treasurer and constable*," in the same manner as "other city taxes." And that the "amended charter" referred to was the "act" in amendment of the charter then pending before the legislature.

The warrant and the assessment we deem in accordance with the act of the legislature.

II. It is insisted that if these laws shall be construed to authorize the proceedings set out in the avowry, they are unconstitutional and void. It is conceded that local and unequal assessment in the ratio of benefit received may be upheld as warranted under the taxing power of the State. But it is claimed that the rule adopted by the council of like assessment upon like buildings, but in the ratio of *frontage* upon the streets containing the water-pipes, without any reference to the *use* or benefits from the *use*, is so unreasonable that it should be adjudged by the courts void.

General taxation implies a distribution of the burden upon some general rule of *equality*. So a local assessment, or tax for a local benefit, should be distributed among and imposed upon all *equally*, standing in like relation. But *equality* can never be but an *approximation*.

The legislature authorized " the city council of Burlington to *establish* rates of annual rents for the supply of water, by means of the city water-works, and apportion to the different classes of buildings, &c., * * * * and to vacant lots as near as may be practicable."

In order to meet the annual interest accruing on the bonds issued for the construction of the water-works, the city council "apportioned" this burden, by assessing vacant land eight cents per front foot abutting on the water-pipes, and a higher assessment upon lots having buildings thereon, according to the character and uses of the buildings.

The demurrer admits the facts averred in the avowry. And the assessment having been made for a beneficial purpose, every fair and reasonable intendment should be made in favor of upholding it.

That a municipal corporation may be authorized to make a local and special tax, or assessment, for the building of sewers,

side-walks, drains, and aqueducts, and apportion the expense in the ratio of the benefits received, is admitted, and is well settled by authority. *People ex rel. Griffin* v. *Mayor, &c., of Brooklyn*, 4 Com., 419 ; *Nichols* v. *Bridgeport*, 23 Conn., 189. Ang. on High., p. 157, and cases there cited.

And it is not easy to see any distinction between an assessment for building a sewer or side-walk, and an aqueduct. They are each, in degree, a general benefit to the public, and a special benefit to the local property, both in the uses and the enhanced value of the property. The proprietor may, indeed, leave his houses tenantless, and his vacant lots unvisited, but the assessment is not, for that reason, void. Such assessments are justified on the ground that the subject of the tax receives an *equivalent*. But if the court should hold the assessment void, because they adjudged the equivalent unequal, then no tax could stand, and government would cease. Labor and the small estates bear the great burden of taxation, while wealth eludes it, and the wit of men has not yet made any near approach to the *equal* distribution upon property of the burdens of taxation.

In the case *Northern Ind. R. R. Co.* v. *Connelly*, 10 Ohio N. S., 159, PECK, J., says, " It is quite true that the right to impose such special taxes is based upon a presumed *equivalent*, but it by no means follows that there must be, in fact, such full equivalent in every instance ; or that its absence will render the assessment void." In that case the assessment was in the ratio of *frontage* upon the street ; and although the plaintiff railroad was in no degree directly benefited, yet the assessment was held valid. It was subject to a general rule that applied to all in like relation and like position.

There is little profit in discussing whence the power is derived. It is enough that it exists. It is quite clear that the levying such local assessments is not taking private property " for public use," under the right of eminent domain ; but is the exercise of the right of *taxation* inherent in every sovereign State. *People* v. *Mayor, &c., of Brooklyn, supra ; Williams* v. *Mayor, &c., of Detroit*, 2 Mich., 565 ; Cooley's Com. L., 497–8.

The power of taxation implies *apportionment ;* and when the

legislature have exercised the right, and made the apportionment, a court should not assume to declare it void unless the invasion of private right was flagrant, and its demonstration clear.

It is said in argument, that there are shops in the city with fifty feet frontage, which derive from the aqueduct the same measure of benefit as other shops with two hundred feet frontage, and occupying no greater area; but no such fact is *in the case*, and we could take no judicial knowledge of such fact if it existed. We can only look at the possible and probable evils that might occur under such system of local assessment. Nor are we called upon to determine what manner of *apportionment* is in our judgment most equable and just. It is obviously not *unjust* that property abutting on the aqueduct, and enhanced in value by it, should bear a portion of the expense, though its owners elect to have no benefit from its use. And we think the apportionment of the burden in the ratio of frontage is not in violation of the constitution.

We have no doubt that a local assessment may so transcend the limits of equality and reason, that its exaction would cease to be a *tax*, or contribution to a common burden, and become *extortion* and *confiscation*. In that case, it would be the duty of the court to protect the citizen from *robbery* under color of a better name.

The result is that the judgment of the county court is reversed, and judgment that the avowry is *sufficient*. That the plaintiff return the property replevied to the defendant, and that the defendant recover one cent damage and his costs.