ATLANTIC COAST LINE RAILROAD CO. v. CITY OF
WINTER HAVEN.

(3 Cases.)
151 So. 321.
Division A.
Opinion Filed November 18, 1933.

808

*W. E. Kay* and *T. Paine Kelly,* for Appellant;
*Henry L. Jollay,* for Appellee.

Davis, C. J.—These three appeals by the Atlantic Coast Line Railroad Company present the question whether or not, under the circumstances set up in an affirmative answer interposed to bills of complaint brought to foreclose certain unpaid street paving assessment liens imposed by the City of Winter Haven, the railroad company is entitled to judicially resist the foreclosure of the liens, insofar as they are sought to be enforced under an application of the so-called "front foot" rule as a measure of determining the benefits to the burdened railroad property, occasioned by the street paving improvement.

The material portions of the railroad company's answer, to which a general demurrer* interposed by complainant was

---

*At the time this ruling was made the statutes provided for demurrers to answers in Chancery. See Chapter 13660, Acts of 1929, amending Section 3124, Rev. Gen. Stats.

sustained by the Chancellor, were allegations to the following effect: That in making the assessment upon which the city's lien was entered, the city had not undertaken to assess the special benefits received by the railroad company's property on the basis of, and giving consideration to, the peculiar character and use to which such assessed property had been dedicated by the railroad company as a public service corporation; that defendant's business was that of an interstate railroad carrier affected with a public interest, but the city had made its assessments of such property simply by dividing the total cost of the street improvement by the total lineal front footage of the railroad property on the street improved, thereby applying to the assessment of the railroad property the same "front foot" rule that it had followed in making assessments against owners of other kinds of property abutting, abounding, adjoining or contiguous to the street improvement, such as that devoted to use for mercantile businesses and the like; that the railroad company had duly protested against such manner of assessment of its railroad properties and had duly notified the city that it would contest the legality of any certificate of indebtedness or other assessment which the city might make by its arbitrarily following the "front foot" rule; that the city, through its governing body, did not make any attempt to ascertain the special benefits, if any, resulting to the railroad property by reason of the making of the street improvement, but had sought to impose upon the railroad company, as an abutting property owner, an assessment for benefits solely in proportion to its front footage in the street being improved, despite the fact that all of the assessed railroad company's abutting property was used exclusively for railroad purposes and solely for a right-of-way for the carriage of goods, wares and merchandise as a public carrier upon its line of railroad

from Richmond, Virginia, to Bartow, Florida, and beyond; that the improved streets and avenues intersected the railroad company's right-of-way at right angles and that the railroad company had caused to be built and constructed, entirely at its own expense, crossings of an adequate nature at said intersections; that the improved streets and thoroughfares in question were the main public thoroughfares of the City of Winter Haven, and that although the railroad company's right-of-way properties abutted on the improved streets, that the nature of the railroad property was such that it was not susceptible of special benefits as contemplated in the city's scheme of assessments for the costs of the improvements to the streets, hence the liens predicated on such assessments were and are unenforceable and incapable of being foreclosed against the railroad company.

The bill of complaint shows that the liens were imposed under Chapter 11300, Acts of 1925, Laws of Florida, and Chapter 9298, Acts of 1923. The bill of complaint was not defective in form or substance to set up an adequate right under such statutes. Therefore, the defendant's general demurrer to the bill of complaint was properly overruled.

So the question to be decided on this appeal recurs on the proposition: "Did the railroad company's answer to the bill of complaint show an equitable defense to it sufficient to withstand the general demurrer to such answer filed by the complainant city?"

The finally accepted statement of the law of this State on the subject of municipal special assessments of railroad properties for part of the costs of street improvements, made under Chapter 9298, Acts of 1923, *supra,* is to be found in the opinion of Mr. Justice STRUM for this Court in the course of his rendition of this Court's ultimate decision on the merits of the appeal dealt with in the case of Atlantic

Coast Line R. Co. v. Lakeland, 94 Fla. 347 (text 386), 115 Sou. Rep. 669 (text 683).

In that case it was held that the "front foot" plan of apportionment of cast of municipal street improvements, assessed against abutting properties alleged to have been specially benefited by the improvements, is, within itself, a valid exercise of the legislative power to make and spread such special assessments, and that the plan may be utilized even as against the abutting properties of railroad companies. But it was also held by way of limitation on the power admitted to exist, that such plan, when actually applied to railroad properties, would be recognized by the courts as conclusive only so long as the special and peculiar benefits inuring to the railroad property required to bear the burden of a "front foot rule" assessment, are substantially proportionate and equal to the charge laid against such property to pay for the improvement, and provided that in the utilization of the "front foot" plan, and in its execution, the essential requirements by the Constitution and of the statutes are observed, and no abuse of the delegated power appears.

The view usually taken on the subject as to what property is subject to special assessment for public improvements is the one from the standpoint of enhancement in the market or utility value of the real property affected. If specially assessed property is, or may be, enhanced in value by the improvement when made, it is subject to an assessment in proportion to the benefits it will likely receive from the execution of the work. And in determining probable benefits, the general enhancement in value of the locality as a whole in which the improvement is to be made, may be taken into consideration in making an apportionment of benefits to the individual properties situate therein. It is

on this theory that a railway contiguous to a proposed street improvement has been, in almost all the American juris-dictions, held subject to imposition of special benefit assessments for its proportion of the costs of constructing special street improvements, since it is recognized that a line of railroad serving a municipality whose population will likely be enlarged, and whose volume of business may be increased through such improvements, will necessarily receive an indirect benefit through enhancement in the value of its line in that locality, although the direct benefit to the immediate contiguous property itself may be comparatively small. Davis v. City of Clearwater, 104 Fla. 42, 139 Sou. Rep. 825; Atlantic Coast Line R. Co. v. City of Gainesville, 83 Fla. 275, 91 Sou. Rep. 118, 29 A. L. R. 668; See also note to Minneapolis, St. P. & S. Ste. M. R. Co. v. Minot, 37 A. L. R. 221; 25 R. C. L. 117; Northern Indiana R. Co. v. Connelly, 10 Ohio St. 159; Northern Pac. R. Co. v. City of Seattle, 46 Wash. 674, 91 Pac. Rep. 244, 12 L. R. A. (N. S.) 121; Chicago, M. & St. P. R. Co. v. City of Janesville, 137 Wis. 7, 118 N. W. Rep. 182, 28 L. R. A. (N. S.) 1124, and notes.

It is for the Legislature and not the judiciary to determine whether the expense of a public improvement shall be borne by the whole community, or by the district or neighborhood immediately benefited. Raleigh v. Peace, 110 N. C. 32, 14 S. E. Rep. 521; 17 L. R. A. 330; Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. Rep. 966, 42 L. Ed. 270. And the power to determine whether or not the property assessed to pay the cost of a local improvement is benefited by such improvement, is legislative, not judicial. Speer v. City of Athens, 85 Ga. 49, 11 S. E. Rep. 802, 9 L. R. A. 402; Sheley v. Detroit, 45 Mich. 431, 8 N. W. Rep. 52; Moody & Co. v. Sportorno, 112 La. 1008, 36 Sou. Rep. 836; King v. City

of Portland, 38 Ore. 402, 63 Pac. Rep. 2, 55 L. R. A. 812. And generally the determination of a city governing authority that abutting property on the line of a strict improvement, assessed by authority of statute in proportion to its front footage, has received special benefits equal to the assessments is conclusive against all collateral attacks. Pittsburgh, C. C. & St. L. R. Co. v. Taber, 168 Ind. 419, 77 N. E. Rep. 741, 11 Am. & Eng. Ann Cas. 808; Hammett v. Philadelphia, 65 Pa. St. 146, 3 Am. Rep. 615; Allen v. Galveston, 51 Texas, 302; Daily v. Swope, 47 Miss. 367.

But it is also equally well recognized that a local assessment may so transcend the limits of equality and reason that its exaction would cease to be a tax or contribution, and become extortion and confiscation, in which cases it then becomes the duty of the courts to protect the person or corporation assessed, from robbery under color of a better name. Allen v. Drew, 44 Vt. 174; Sands v. Richmond, 31 Gratt. (Va.) 571; 31 Am. Rep. 742; Broadway Baptist Church v. McAtee, 8 Bush, 508, 8 Am. Rep. 480; King v. Portland, *supra*.

The theory of the law which justifies an assessment for street paving to be determined strictly on the basis of the "front foot rule" as a permissible means of apportionment of cost, is undoubtedly as soundly applicable to railroad rights-of-way properties as a permissible legislative plan of cost apportionment, as it is to other classes of property not belonging to or used for railroads.

But as this Court has pointed out, the "front foot" plan, while not inherently an unjust and inequitable method of arriving at an apportionment of costs, may prove such a plan in actual practice as against railroad properties. For example, a railroad company, from its very nature, in all likelihood would not derive any special benefit at all from

a mere paving project carried out in a remote subdivision, in a sparsely settled section of a small town, also its tracks and properties connected therewith may be abutting to all the streets that are ordered paved and paid for by means of a special assessment levied against the abutting, specially benefited properties. On the other hand the paving of a street in a developed section of a city, abutting the railroad's rights-of-way and tracks in such developed business center, may so add to the surrounding property values, and so improve the general business values of real estate in the vicinity, *including the business value of the railroad line at that point,* as to warrant an assessment on the abutting railroad properties of exactly the same kind and character as might be placed against other kinds of property abutting the improvement.

So the pole star for deciding every case like that here presented is a determination whether or not the special and peculiar benefits inuring to the property required to bear a special assessment for the entire costs of a local street improvement, have been substantially, proportionately and equally laid and spread against all of the properties that may be required to pay a specially assessed part of the cost of the improvement made.

Section 2 of Chapter 11300, Special Acts of 1925, Laws of Florida (similar to Chapter 9298, Acts of 1923, the general law on the same subject) provides that special assessments may be made by the governing authority of Winter Haven against properties deemed to be specially benefited, in proportion to the benefits to be derived therefrom, said special benefits to be determined and prorated according to the front footage of the respective properties specially benefited by the improvement "or such other method as the governing body of the municipality may prescribe."

The record shows that as concerns. all the property as-sessed by the City of Winter Haven with respect to the improvement for which special assessments were made in these cases, the governing authority adopted the "front footage" rule as the method of determining and prorating benefits.

According to the facts set up in the answer of the railroad company, the application of the "front footage" rule to its properties involved in these cases, dedicated to public use solely for railroad purposes in carrying on its transportation business through the city of Winter Haven, amounts to an abuse of power by the governing authority of the city, in that the application of such rule to its properties results in an arbitrary imposition of a burden not at all based on any just proportion of benefits that it could possibly derive from the execution of the work involved in the improvement for which assessments have been spread.

The answer further shows that the railroad company promptly protested against the method of assessment adopted, and that from the very first, that it made known to the city officials that it would resist as unlawful and unjust to it, the imposition of any assessment whatsoever against its properties, if based on an application of the "front footage" rule that the city had adopted for application to other abutting properties.

So the railroad company is not guilty of laches, nor es-topped in its defense, by a failure to object before the work was done, because it did object to the fullest extent of which it was capable, short of instituting litigation of an affirmative character, in advance of the city's attempt to enforce its assessments against it in a suit in which it is required by the statute to be made defendant. So the doctrine of Abell v. Town of Boynton, 95 Fla. 984, 117 So.

Rep. 507, is not preclusive of the defense that was attempted to be interposed in this case, insofar as estoppel and laches is concerned.

The issue and sale of bonds on the strength of these particular assessments, was done by the City of Winter Haven subject to the general liability of the municipality on such bonds should the special assessments, or any of them, either be not imposed or be not collected in season. Section 7, Chapter 11300, *supra*. Under Section 14 of the same Act, it is also provided that if any attempted assessment be vacated or annulled by the judgment of any court, that the City should have power to take all necessary steps to cause a new assessment to be made in accordance with law. Thus, Section 14 of the Act is a statutory recognition of the rights of protestants to object, and to seek to have corrected in the courts, alleged abuses of power and substantial errors claimed to have been committed by the governing authority of the city in the unvarying application of the "front footage" rule universally and without exception to all properties, including those properties so situated that the application of the rule to them might, and likely does, result in a burden substantially in excess of any special or peculiar benefit reasonably expected to be derived from the improvement.

Construed as an entirety (although it is no model of good equity pleading on the propositions attempted to be asserted as defenses to the foreclosures) the answer of the defendant railroad company in each of these cases sets up sufficient allegations of ultimate facts from which it can be discerned, if the allegations are taken as true (as the general demurrer admits them to be) that a burden amounting to an unjust discrimination in a legal sense, and amounting to confiscation of the railroad company's properties without

due process of law, may follow the inflexible utilization by the City of Winter Haven of the statutory plan by which substantially the whole cost of paving the abutting streets was imposed upon the abutting properties, including without modification the railroad properties of the defendant, that the answer alleges to be differently affected and differently benefited, if at all, by the improvement than the other properties abutting on the identical street paving.

The mere fact that the answer might complain of the imposition of a burden which is simply unfair in a practical sense, but not amounting to unjust discrimination or confiscation in a legal ·sense, would admittedly be ·no defense. Atlantic Coast Line R. Co. v. Lakeland, 94 Fla. (text 397), *supra*. This is so because, as was held in the case just cited, the power of the legislative authority is not measured or limited by what is fair, just, equitable, or reasonable in a practical sense, when that authority, by competent action, and without any abuse of power, has seen fit to impose the burden of assessments, unfair in a practical sense, but not in excess of the permissive power exercised.

So the answers in the case now before us, as we construe them, go beyond a mere challenge of the wisdom, fairness or policy of the city's governing authority in its execution of the powers conferred upon the City of Winter Haven by Chapter 11300, Acts of 1925, and Chapter 9298, Acts of 1923. Therefore the answers contained a substantially good equitable defense that should not have been held bad on the demurrers of the complainant thereto.

Under Chapter 11300, Acts of 1925, the power of the City of Winter Haven to make apportionments of cost as a basis for special benefit assessments, was not limited to strict adherence to the "front footage" rule as to every apportionment of benefits made by it. It was within the

power of the city's governing authority to employ a different rule of apportionment in dealing with specially situated properties, such as railroad properties, if the facts, circumstances, and conditions of such specially situated properties required the employment of some other apportionment method, in order to avoid the resultant imposition of an excessive or unlawful burden on properties of such peculiar use, character and situation that the "front footage" rule could not lawfully be applied to them in the particular instance.

When not barred by waiver or laches, substantial and fatal errors of judgment alleged to have been committed by a city in executing a delegated statutory power to determine and apportion benefits as a basis for special assessments for public improvements, may be set up in defense to the attempted foreclosure by the municipality of the particular special assessment liens into which it is fully alleged such fatal and substantial errors of judgment have been carried, in the course of the municipality's having the amounts of the liens determined and entered of record as charges to be enforced against the specially benefited properties by foreclosure of such liens.

And even though a defense as set up in an answer, may go only to the extent of showing an excessive apportionment of benefits, as distinguished from an apportionment unauthorized and void in its entirety if the answer to be taken as true, the answer should be allowed to stand, and to avail the defendant in the foreclosure as far as in law and equity it ought to avail him.

Courts of equity when called upon to enforce by foreclosure proceedings, statutory municipal improvement liens imposed on property for special assessments to pay the cost of public improvements, must enforce the liens for the

amounts for which they were entered, if the liens were entered by the municipality in strict accordance with the terms of, and procedure required by the statute authorizing them. But if the liens be found to have been lawfully entered, but for amounts in excess of the constitutional powers of the governing authority of the city as applied to the facts of the particular case before the Court for consideration, the excess only is subject to judicial annullment or restraint, since in granting relief of this kind, the courts are exercising judicial power to the extent only of protecting property rights from unjustified exactions and extortions, not as a means of interfering with that which was done within the limits of power conferred.

The decrees appealed from are reversed with directions to overrule the demurrer to the answers, permit the answers to be reformed to present the defense attempted to be asserted therein by re-pleading the same in the form required by the 1931 Chancery Act, and to thereafter have such further proceedings as may not be inconsistent with this opinion.

Reversed with directions.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, J., concurs specially as per opinion attached.

BROWN, J., absent and not participating on account of illness.

ELLIS, J. (concurring).—I agree to the conclusion in this case on the authority of the decision in Atlantic Coast Line R. R. Co. v. City of Lakeland, 94 Fla. 347, 115 South. Rep. 669, and the opinion prepared by me when that case was first submitted and on the rehearings and the opinion of Mr. Justice BROWN, text 399.

The answer in the instant case sets up a clear defense to the attempted exercise of the power by the City of Winter Haven. The views expressed in those opinions are not

of harmony with the defense set up in the answer which avers that the city had not undertaken to assess the special benefits received by the Railroad Company; that the city had made its assessments simply by dividing the total cost of the street improvement by the total lineal front footage of the railroad property; the city not only did not assess but refused to ascertain what special benefit if any accrued to the railroad property, and that the nature of the property was such that it was not susceptible of special benefits as contemplated in the city's scheme of assessments.