McCORD, Judge.
This appeal is from an amended final judgment invalidating a special assessment levied by appellant, City of Gainesville, against the property of appellee, Seaboard Coastline Railroad Company. We reverse.
The Railroad filed this action below as a suit for declaratory judgment seeking to have the court determine the validity of two special assessments levied by the City against the Railroad’s property for the paving of a part of Northeast 31st Avenue in the City of Gainesville. Prior to January 15, 1971, the Railroad owned a planned and platted industrial park in the City of Gainesville which abutted the north line of a platted 80-foot right-of-way for Northeast 31st Avenue. At that time, the City already owned a parcel of property in the shape of a parallelogram 200 feet on each side which abutted the north line of the platted right-of-way and jutted into the industrial park at its southwest corner. A small sewer lift station of the City was located in the parallelogram. On January 15, 1971, the City purchased from the Railroad in fee simple a 100-foot wide strip of land off the south end of the Railroad's industrial park property to use for electric transmission lines. Thus, the City then became the owner of this 100-foot strip plus the previously owned 200-foot parallelogram all lying between the right-of-way and the Railroad’s industrial park. With the sale to the City, the Railroad reserved one 30-foot wide easement and two 60-foot wide easements across the 100-foot strip which gave it access from its industrial park property to the right-of-way of Northeast 31st Avenue. The City then erected on the 100-foot strip three permanent utility poles for transmission lines, each pole being 26 inches in diameter. Also, a drainage ditch crosses the strip at right angles to the right-of-way. The 100-foot strip remained otherwise unused. Adjoining this property on the west, the City owned two adjoining strips of land totaling 170 feet in width running westerly to Northeast 15th Street. With this purchase by the City from the Railroad, the Railroad’s industrial park no longer abutted on the platted right-of-way, but the three easements which it had reserved gave it access to the right-of-way.
Thereafter, in October 1973, the City was presented with a street-paving petition for that part of Northeast 31st Avenue between Waldo Road and Northeast 15th Street (along the property above alluded to). The City Commission held a preliminary public hearing on the matter in January 1974. At the hearing, an attorney representing the Railroad appeared and object *1071 ed to any assessment against it for this paving except for 209.04 feet which comprised the three easements and a short spur track. After referring the matter to the Public Works Committee of the City for study and recommendation, the City Commission met again in February 1974 to consider the issue. Following the recommendation of the Public Works Committee at that meeting, which was concurred in by the City Manager, the General Manager of Public Utilities, and the City Attorney, the City Commission voted to dedicate all of the city-owned property on the north side of Northeast 31st Avenue to public use “to allow the City to assess the properties on the north side of the right-of-way.” Thereafter, on March 4, 1974, the City Commission adopted a resolution to the above effect. Thus, the 100-foot-wide strip which the City purchased from the Railroad, the 200-foot parallelogram containing the sewer lift station, and the 170-foot strip to the west, which was already owned by the City, and which connected the right-of-way to Northeast 15th Street, were all dedicated as public rights-of-way. This increased the right-of-way for Northeast 31st Avenue from 80 feet to 180 feet, where it adjoined the Railroad’s property, and again the Railroad’s property shared a common boundary with the right-of-way for Northeast 31st Avenue.
In January 1975 the City Commission passed an ordinance authorizing the paving of Northeast 31st Avenue and authorizing special assessments for that improvement against abutting properties. At a hearing in February 1975 the Commission adopted a resolution adjusting and equalizing the special assessments and declaring them to be liens on the abutting properties. At that hearing, the City Commission read a letter submitted by the Railroad’s attorney objecting to the Railroad being assessed for the improvements since “they do not own property abutting the right-of-way for the street.” Pavement of the avenue was begun by the City in April 1975.
Testimony at trial showed that Northeast 31st Avenue is designated as a “major collector” on the City’s Major Thoroughfare Plan, which required 70 feet of right-of-way. Testimony indicated that if the designation of Northeast 31st Avenue were upgraded in the future to a “through-fare,” a total of 80 feet of right-of-way would be required, the same width which existed prior to the dedication of the 100-foot-wide strip.
The trial court, by its amended final judgment, invalidated the assessment against the Railroad except for the 209.04 feet comprising the easements and the spur track. The court predicated this action upon the following “discussion of law” in its judgment:
The court should not and does not concern itself with the individual “motive” of a Commissioner as to why the City dedicated its property acquired for transmission of its electricity to a “public use” but in the case sub judice, the city officials caused to be recorded in its records the reason as stated in Paragraph 5, supra, which causes the Court to be concerned with the ultimate result as herein-above found and stated.
Therefore, the City’s action amounted to fraud in contemplation of law, was arbitrary, unreasonable, resulted in the improper exercise of its police power and would be confiscatory without due process of law were it sanctioned by this Court. Atlantic Coastline Railroad Company v. City of Winter Haven, 151 So. 321 (Fla.1933), and Schauer v. City of Miami Beach, 112 So.2d 838 (Fla.1959).
Paragraph 5 of the Court’s judgment referred to in its discussion of law quoted above, states as follows:
5. On February 11, 1974, the Chairman of the Public Works Committee reported to the City Commission that the Committee had received a recommendation from the City Manager “that the City dedicate all of the city-owned property on the north side of Northeast 31st Avenue to ‘public use’ to allow the City to assess the properties on the north side of the right-of-way . . .’’At the February 11, 1974, meeting of the Gainesville City *1072 Commission, the Commission approved the recommendation.
Thus the entire predicate and rationale for the trial court’s ruling was its finding that the City’s action as above related “amounted to fraud in contemplation of law, was arbitrary, unreasonable, resulted in the improper exercise of its police power and would be confiscatory without due process of law.” We respectfully disagree with the learned trial court’s conclusion of law as applied to the facts which it found. The City’s action would only be confiscatory if the Railroad’s property is not benefitted by the improvement to the extent of the assessment or if only incidental benefit results to the property improved and the primary benefit is to the public. See City of Ft. Myers v. State, 95 Fla. 704, 117 So. 97 (1928). The trial court made no findings on the question of benefits.
We are unable to find fraud in the City’s action. The dedication of the City’s 100-foot strip, on which its electric transmission lines were located, as additional 31st Avenue right-of-way would enable the City to assess the Railroad’s property for its fair share of the paving costs, commensurate with the benefits the Railroad’s industrial park would receive by virtue of such paving if the primary benefit was to the Railroad’s property with only incidental benefits to the public. It is common for utility lines to be located on street rights-of-way. Expert testimony presented was that the Railroad’s property experienced an increase in value at least to the extent of the amount of the assessment.
We have considered the two authorities cited by the able trial judge in support of his ruling, which are also relied upon by the Railroad. The Supreme Court, in Atlantic Coastline Railroad Company v. City of Winter Haven, 151 So. 321 (Fla.1933), cited by the trial court, held that:
. a local assessment may so transcend the limits of equality and reason that its exaction would cease to be a tax or contribution, and become extortion and confiscation, in which cases it then becomes the duty of the courts to protect the person or corporation assessed from robbery under color of a better name.

There the question was whether or not the answer filed by the Railroad to the complaint of the City seeking foreclosure of the street-paving assessment liens stated an adequate defense. In upholding the answer, the Supreme Court said:
According to the facts set up in the answer of the railroad company, the application of the “front footage” rule to its properties involved in these cases, dedicated to public use solely for railroad purposes in carrying on its transportation business through the city of Winter Haven, amounts to an abuse of power by the governing authority of the city, in that the application of such rule to its properties results in an arbitrary imposition of a burden not at all based on any just proportion of benefits that it could possibly derive from the execution of the work involved in the improvement for which assessments have been spread. (Emphasis supplied.)
That decision has no relation to the circumstances of the case sub judice since the trial judge made no finding as to the benefits.
Schauer v. City of Miami Beach, 112 So.2d 838 (Fla.1959), also cited by the trial court, dealt only with the motive of a city councilman (his interest in the property affected) in his voting for a zoning ordinance amendment. The court held that the action of the city council was a legislative function, and the motives of councilmen in voting for the amendment were not proper subjects for judicial inquiry. It further held that the fact that the councilman had a selfish, interest in voting for the zoning ordinance amendment would not amount to fraud or overreaching. The Supreme Court, therefore, did not disturb the ruling of the District Court of Appeal, Third District, which reversed the trial court’s ruling which had declared the zoning ordinance invalid. If anything, the Supreme Court’s opinion in Schauer lends support to the validity of the assessment in the case sub judice. We have considered the other cases *1073 cited by the Railroad in support of its position on this point but find them to be inapplicable to the situation presented in this case.
REVERSED and remanded with directions to the trial court to re-evaluate the evidence on the question of benefits.
MILLS and SHIVERS, JJ., concur.