[L. A. No. 3322. In Bank.—April 10, 1915.]

THE SPRING STREET COMPANY (a Corporation), PACIFIC STATES CORPORATION, Substituted Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

[L. A. No. 3325. In Bank.—April 10, 1915.]

HAMBERGER REALTY AND TRUST COMPANY (a Corporation), et al., Appellants, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

STREET ASSESSMENT—WIDENING STREET—ASSESSMENT FOR AMOUNT AWARDED IN CONDEMNATION PROCEEDINGS—FAILURE TO ASSESS IN PROPORTION TO BENEFITS.—A special assessment to defray the cost of widening a city street for the distance of six blocks, levied on the lots fronting on the street, which were of widely different values dependent upon their respective locations, according to a plan whereby each particular lot was assessed the exact amount of the damages awarded to the owner in condemnation proceedings for the land taken, plus a front foot proportionate amount of the expense of the city in such proceedings, is invalid upon its face for not being an assessment in proportion to the benefits resulting to the owners of the respective lots.

ID.—FOUNDATION OF RIGHT TO LEVY SPECIAL ASSESSMENTS.—The return to the property owner by way of benefit is, under the constitutional limitations of our system of government, the basic foundation upon which the right to levy such special assessments rests.

ID.—PROTEST TO CITY COUNCIL—INFRINGEMENT OF CONSTITUTIONAL RIGHTS.—Such assessment being invalid for the infringement of the constitutional rights of the property owner, the latter is not debarred from questioning its legality in legal proceedings, by the fact that he protested against it before the city council and his protest was overruled by it and the assessment confirmed.

APPEALS from judgments of the Superior Court of Los Angeles County and from orders refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Lloyd, Hunt, Cheney & Geibel, and Lloyd, Cheney & Geibel, for Appellants in No. 3322.

Denis & Loewenthal, and E. E. Millette, for Appellants in No. 3325.

John W. Shenk, City Attorney, Albert Lee Stephens, City Attorney, and C. D. Pillsbury, Deputy City Attorney, for Respondents.

HENSHAW, J.—These actions, separately brought, were both for the purpose of having declared void the same special assessment based on benefits received by the land under the widening of Eighth Street in the city of Los Angeles, and so to enjoin the collection of the sums charged by the assessment against the properties of plaintiffs. The two cases involving, as they do, the same considerations of law, may be determined together. The appeals in both cases are from the judgment and from the order denying the motion for new trial.

The authorities of the city of Los Angeles decreed the widening of Eighth Street in that city for a distance of six blocks between Figueroa Street upon the west and Broadway upon the east to the easterly line of the former and the westerly line of the latter. The street was to be widened five feet upon each side, necessitating the taking of a five-foot strip from all of the property owners upon the northerly and upon the southerly side of this street between Figueroa and Broadway. An assessment district was declared, which assessment district embraced (approximately) all of the lands between Figueroa Street and Broadway to a distance of about 110 feet north and 110 feet south of Eighth Street. On Eighth Street in this district were lots of differing values—interior lots having a frontage on Eighth Street alone—other lots having a frontage upon Eighth Street and upon one or another of the intersecting streets—thus being corner lots of greater value.

A suit to condemn these five-foot strips was instituted and the decree fixed the amount to be paid to the owners for their lands to be taken. These judgments aggregated $226,682.50. The Hamburger Realty & Trust Company (which alone may be considered as representing all of the other plaintiffs) was awarded damages in the sum of twenty thousand dollars. The Hamburger Realty & Trust Company's property is situated at the southeast corner of Eighth and Broadway, having a frontage of 120 feet on Broadway within the assessment district, and extending on Eighth Street 166.75 feet. It is unquestioned and appears from the judgments given, that properties fronting on Eighth Street alone are of very much less value than properties fronting on Broadway and its adjoining street—Hill Street—which are important commercial and business streets of the city. The taking of the five-foot strip from the plaintiff was therefore a taking from all of its real estate within the district of 166.75 feet x 5. But what was perhaps of equal consequence, it was a cutting down of the Broadway frontage by five feet. To cover the cost of the proposed improvement, the board of public works of the city of Los Angeles, under the charter acting in lieu of a street superintendent, prepared and filed an assessment, charging against the lands in the district certain sums based on the benefits which it was estimated they would receive by reason of the street widening and in the case of the Hamburger Realty & Trust Company charged their lands in the assessment with $12,794.10.

Upon notice given of the filing of this assessment, protests were entered against it by certain disaffected property owners. A hearing of these protests was had before the "Streets and Boulevards Committee of the Council," which reported a recommendation that the protests be sustained, "and that the assessment be referred back to the board of public works with the recommendation that the same be modified as follows, to wit: That the assessments on lots fronting on the cross streets be as they are at present; that the lots fronting on Eighth Street be assessed the same amount as allowed for land taken and that the balance of the amount to be raised be assessed equally per front foot on the land fronting on Eighth Street." Upon this report coming before the council it ordered, "that the board of public works be instructed to make and file a new assessment, and that the report of the

streets and boulevards committee be referred to the board of public works for consideration in making the said new assessment.''

Under these recommendations or directions the board of public works reported to the city council as follows:
''Gentlemen:

''Pursuant to a motion made and adopted by the city council at its meeting on April 6, 1910, the assessment for the widening of 8th Street from Broadway to Figueroa Street was returned to this board with instruction to make a new assessment, and referring with said instruction the following recommendation of the committee of streets and boulevards for the consideration of this board:

'' 'That the assessments on the lots fronting on the cross streets be as they are at present; that the lots fronting on 8th Street be assessed the same amount as allowed for land taken, and that the balance of the amount to be raised be assessed equally per foot on the land fronting on 8th Street.'

''This board has followed that recommendation, and has shown the amounts assessed in red ink alongside of the amounts assessed in the original assessment.

''We are, however, still of the opinion, that the original assessment as made by this board is proper and correct, and beg leave to invite the attention of the honorable council to the several assessments on lots situated in the middle of blocks, and which have been assessed a comparatively small amount in this new assessment, because the amount allowed for land taken was small, whereas these inside lots are benefited more in proportion to the lots on the corners, as they only have the 8th Street frontage.''

Protests were filed to this so-called new assessment, urging that it was arbitrary, unjust, excessive, and illegal, but, after hearing, the council confirmed it *in toto*.

The effect of the assessment so made is not and may not be questioned. It canceled every dollar of the two hundred and twenty-six thousand dollars awarded by the court in the condemnation proceedings for the taking of this private property for a public use, under an implied omnibus finding that the property of every person whose lands fronted on Eighth Street was benefited at least to the amount of his award in the condemnation proceedings for the taking of his property, and was also benefited just a little more, that little being the prop-

erty owner's proportionate share of the expense of the city in the matter of its condemnation proceeding, which additional amount is contemplated by the suggestion contained in the report of the streets and boulevards committee "that the balance of the amount to be raised be assessed equally per front foot on the land fronting on 8th Street." Specifically, upon the property of the Hamburger Realty & Trust Company is imposed an assessment of twenty thousand dollars, in cancellation of the judgment of the court of the value of its property taken for this public use, and $115.20 being its proportionate share of the expense to which the city was put in the doing of this thing. Thus, in practical effect, while real property of the plaintiff to the value of twenty thousand dollars, as found by the court, is taken away from it for public use, and while the constitution of the United States and of this state declare that this cannot be done without compensation to the owner, this plaintiff not only receives no compensation, but in addition to the loss of its property is compelled to pay $115.20 because the city has seen fit to take it. Thus plaintiff would have saved $115.20 if, upon the first intimation that the city designed to condemn its property under the laws of the land, it had hastened to make the city a free gift of it. And the same is true in the case of every other property owner having the misfortune to own lands fronting upon Eighth street. When finally we are told that this result has been accomplished under the constitution and laws of the land, it becomes a matter of most serious importance to determine whether or not this can be true.

It will not be amiss here to consider briefly the nature of the power exercised by the legislature, and, under its direct authority, by its mandatories, in the matter of these so-called special assessments based on benefits. We need not be at pains to trace the development of the use of the power, nor yet is it important to refer it to any particular branch of the power of sovereignty—whether it be called the taxing power, the police power, or the power of eminent domain. Bearing in mind that with us all the power that any sovereign state ever possessed resides in the people acting through their legislature, saving as that power is controlled or restrained by the constitution, and as this power of sovereignty, excepting under the constitutional restraint, would permit, as was done in autocracies, the despoiling of the private citizen and the

confiscation of his property, it is quite sufficient to refer to this fact for the origin of the power. Like numberless other powers which have in the past been exercised selfishly, cruelly, and unjustly, it is still a part of sovereignty, saving as it is denied, or repressed, or controlled, by the constitution. That in certain aspects it bears a likeness to taxation is unquestioned, in that it is a charge in terms of money based upon the real property of the owner, which the owner himself is compelled to pay, or in default risk the seizure and sale of his holdings. That in certain aspects it partakes of the nature of eminent domain is manifest from the fact that if a man may be compelled to expend one thousand dollars for the improvement of the street upon which his property happens to front, there is a certain taking of that one thousand dollars for the public use. And, finally, that in other aspects it partakes of the nature of the exercise of the police power is obvious when consideration is paid to the construction of public sewers, drainage districts and like works making for the benefit of the public health. Yet in no one, nor yet in all of these sovereign prerogatives can this particular power be said to rest under our form of government, since if it be said that a special assessment is in strictness a tax, it does violence to our constitutional provision touching the uniformity of taxation. If it be said that this power is referable to the sovereign prerogative of the right of eminent domain, the answer is that with us the state cannot exercise that power without compensation made to the owner of the property taken. And whatever might be said of the ability to refer an assessment for a drainage system to the police power, the argument would fail utterly when applied to the opening and widening of streets, to irrigation districts, desert land reclamation and similar forms of public control over lands privately owned. Indeed, to avoid doing violence to these constitutional limitations upon the power of the legislature, it must be held, as it has so often been held, that a special assessment is not, in the constitutional sense, a tax at all. It is "a compulsory charge placed by the state upon real property within a pre-determined district, made under express legislative authority for defraying in whole or in part the expense of a permanent public improvement therein, enhancing the present value of such real estate, and laid by some reasonable rule of uniformity based upon, in the ratio of,

and limited by, such enhanced value.'' (Hamilton on Law of Special Assessments, sec. 56.) The improvement must have a certain public character, and this we find conspicuously in street improvements, and less conspicuously in reclamation district assessments. Were it not for this recognized characteristic, it would be justifiable to order any owner of any vacant lot to build thereon and to build a prescribed structure, since under the theory of benefits it could successfully be urged that the enhanced value of the land covers the cost of the structure compulsorily imposed upon it. It may be said that the interest of the public would demand that a building lot in the heart of a business district of a city should not be left vacant, its improvement tending to increase business and to enhance the values of surrounding property in which the public is interested. But so far such a public interest has not been considered adequate in support of such an exaction. That the return to the property owner by way of benefit is, under our system of government, the basic foundation upon which this right rests, becomes apparent from the consideration that if we are not able to say that the owner for the specific charge imposed is compensated by the increased value of the property, then most manifestly we have a special tax upon a minority of the property owners, which tax is for the benefit of the public and which tax is special, unequal, and ununiform.

Therefore, the compensating benefit to the property owner is the warrant, and the sole warrant, for the legislature itself to impose the burdens of these special assessments. It has been a matter of profound regret to this court and indeed to every court which has been called upon to consider the question, that in the application of this principle, theoretically equitable, practical operations have shown grave wrong and injustice to be done. With ceaseless reiteration the courts have deplored these unjust exactions and extortions. With tiresome repetition have they advised the lawmakers of methods for the exercise of the power more in consonance with equity and fair dealing. (*Reclamation District* v. *Birks,* 159 Cal. 233, 241, [113 Pac. 170].) But the result here and elsewhere has been that these suggestions, instead of being received as guides, directing a more equitable exercise of the power, have been treated as though they were invitations to an excessive use of the power, in an effort to see just how far the legislative agents and mandatories might go in their tak-

ing of private property without compensation, until told by the court that they had passed the outermost bound of law and reason.

That bound has been reached and passed by the assessment in this case. It bears upon the face of the record, as here presented, convincing and conclusive evidence that no effort at all was made by the council to assess in proportion to benefits. It is impossible that under the exercise of any discretion in the matter it could be found that in every case the damage awarded by the court for the taking of the property was exactly or more than covered by the benefit which would accrue to the remaining property by the widening of the street. And it is also impossible that those separate pieces of property were, in addition, each one of them, benefited to the exact added amount which it cost the city to take the condemned land. It is to strain credulity beyond the breaking point to ask that any such belief be for a moment entertained. Applicable to this assessment is the language of the supreme court of Vermont, speaking through the learned Mr. Justice Redfield, when it says: "We have no doubt that a local assessment may so transcend the limits of equality and reason that its exaction would cease to be a tax or contribution to a common burden, and become extortion and confiscation. In that case it would be the duty of the court to protect the citizen from robbery under color of a better name." (*Allen* v. *Drew*, 44 Vt. 174.)

We believe the assessment here in question to be so manifestly and so grossly unjust upon the face of this record as to call for no extended argument for its condemnation. It was not even the *quasi* judicial act of the board entrusted with the duty of making the assessment, the board of public works. That board apparently entered upon the performance of its duty with a due sense of responsibility justly pertaining to its judicial character. If the communication of the city council to them was a command, they felt compelled to obey it in the matter of the new assessment and did so under formal protest. If it was not a command, but merely a suggestion, then it was a suggestion of which their judgment did not approve, and their disapproval of which they formally expressed. But we need not be at pains to linger over this obvious proposition, for it is not sought by respondents to defend this assessment upon its merits. The defense is

merely that the property owners had their day in court before the city council, their petitions and protests were denied, and the action of the council, in the absence of fraud, will be held conclusive. But to this we answer that the action of the council in the particulars to which this assessment is here subjected to attack, is not conclusive, under the principle declared in *Chase* v. *Trout*, 146 Cal. 350, [80 Pac. 81], and reaffirmed in *Schaffer* v. *Smith*, 169 Cal. 764, [147 Pac. 976], and that the assessment here in question does not come within the principle of *Lambert* v. *Bates*, 137 Cal. 676, [70 Pac. 777]. But still further we hold that the record here presented furnishes convincing evidence that the assessment was ordered prepared without the slightest exercise of judicial discretion, and so unwarrantedly, arbitrarily, and unjustly, as to work a confiscation of the property and to be, therefore, in no legal sense an assessment at all. If this court should say: "*Whenever it is proposed to take private property for purposes of street-widening, public parks, or any other recognized public use, the authorities will submit without protest to any judgment given by the courts in condemnation proceedings instituted to determine the value of the property proposed to be taken.*

*They may so submit with security because they will then assess on account of benefits against the remaining properties of the private owners an amount equal to the award of the court plus an additional proportionate charge for the expense to which the property owners unwarrantedly have put the authorities in the latter's laudable efforts to benefit the public. Thus it will soon be realized by the property owners that in any such case it will be cheaper for them to donate their property outright and thus save this additional charge.*

*N. B.—In every case, however, care must be observed not to take all of any individual's land, or nothing will be left against which to assess on the theory of benefits. In every case, therefore, enough should be left for this most necessary purpose*"; such a declaration would shock the legal profession of the land. Yet for this court to uphold this assessment upon the record before it, would be the equivalent of doing this very thing.

The judgments and orders appealed from are reversed and the causes remanded.

Shaw, J., Melvin, J., Sloss, J., and Lorigan, J., concurred.