[Civ. No. 2723.  First Appellate District, Division Two.—August 14,
1919.]

## HUTCHINSON CO. (a Corporation), Respondent, v. MARGARET FAY COUGHLIN, Appellant.

[1] CONSTITUTIONAL LAW—DUE PROCESS CLAUSE—PURPOSE AND SCOPE.
The purpose of the constitutional guaranty that property shall not
be taken without due process of law is to exclude arbitrary power
from every branch of the government.  It is a restraint upon the
legislative, executive, and judicial departments.

[2] JUDGMENTS—FINALITY OF DECISIONS—FRAUD—EQUITY.—After the
court acquires jurisdiction of the defendant and subject matter of
a particular case, it may proceed to judgment; and so long as the
judgment rendered is one within the general power of the court
extending over all similar cases, and within the issues of the par-
ticular case, that judgment, when it shall have become final, is con-
clusive upon the parties and in regard to all matters adjudged,
regardless of any error on the part of the court.  It may be at-
tached for fraud by a suit in equity, in which the burden of both
pleading and proving the fraud rests upon the complainant.

[3] STREET LAW—ASSESSMENT PROCEEDINGS—FINALTY OF DECISIONS.—
Such rule and the rule that if there is fraud, or arbitrary action
in excess of the jurisdiction of the court, either may be shown in
a proper proceeding, unless the injured party has waived his rights
by consent to the act or in some other way, apply as well to as-
sessment proceedings as to judgments of court.

[4] ID.—OPPORTUNITY TO BE HEARD—FINALITY OF JUDGMENT OF LOCAL
GOVERNING BODY—CONSTITUTIONAL LAW.—Where an individual has
been given an opportunity to present to the local governing body
his objections to an assessment levied for local public improve-
ments, its decision, in the absence of fraud, or arbitrary action
amounting to fraud, may be as conclusive as the judgment of a
court in a civil action.  The constitutional guaranty of the right
to be heard does not necessarily require a determination in a court
proceeding.

[5] ID.—FRAUD—PRESUMPTION—FAILURE TO APPEAL—BAD FAITH NOT
TO BE ASSUMED.—Fraud is never to be presumed, and where a per-
son complaining of a local assessment did not appeal from the
action of the superintendent of streets, who levied the assessment,
to the city council, it cannot be assumed that if such person had
just cause of complaint, the council would not upon appeal have
ordered the assessment corrected.

1.  What is due process of law, notes, 24 **Am. Dec.** 538; 20 **Am.
St. Rep.** 554.

[6] ID.—DISTRICT ASSESSMENT—DETERMINATION OF BENEFITS—NATURE OF PROCEEDINGS — RIGHT TO APPEAL — FINALITY OF DECISION OF COUNCIL.—Under the Street Improvement Act of 1911, where the expense of the improvement is chargeable upon a district, the examination and determination of the comparative benefits by the superintendent of streets is essentially judicial in its nature. If his methods or his conclusions are erroneous, the property owners aggrieved have an opportunity to protect themselves by an appeal to, the city council; and all decisions and determinations of the council upon notice and hearing in this regard are final and conclusive as to all errors and irregularities which the council might have avoided or remedied or which it could then remedy.

[7] ID.—ERRONEOUS ASSESSMENT AFFIRMED—HEARING DENIED—REMEDIES OF PROPERTY OWNER.—If an appeal to the city council is made and that body fraudulently or arbitrarily affirms an erroneous assessment or refuses the property owner a hearing, the courts are open for a direct attack on the action of the council, or on suit being brought to enforce the assessment, such matter may be interposed in defense.

[8] ID.—FAILURE TO APPEAL—ESTOPPEL TO ATTACK VALIDITY.—If a property owner, having a right to defend against an erroneous assessment for work ordered after jurisdiction has been established, fails to assert that right in an administrative tribunal which is vested with power to correct the error, he may not be heard, either as a plaintiff or defendant, in any litigation involving the assessment, to assert its invalidity, without showing either fraud or the exercise of arbitrary and harmful power on the part of the administrative tribunal.

[9] ID.—APPROVAL OF ERRONEOUS ASSESSMENT BY COUNCIL — EFFECT OF.—An erroneous, arbitrary, or even a fraudulent assessment will not render it void after the council has approved it, either actually upon hearing or impliedly because no protests are made.

[10] ID.—CONFISCATION OF PROPERTY—ASSESSED VALUATION IMMATERIAL.—The mere fact that the amount assessed against certain lots for street improvements exceeds the amount at which they have theretofore been appraised for taxation does not necessarily lead to the conclusion that the assessment is confiscatory.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge. Affirmed.

The facts are stated in the opinion of the court.

8. Estoppel of property owner to attack validity of special assessment, notes, **Ann. Cas.** 1915B, 753; 9 **A. L. R.** 634.

Walter J. Thompson and Henry F. Marshall for Appellant.

Ogden & Ogden, as *Amici Curiae,* in Support of Appellant.

Fitzgerald, Abbott & Beardsley for Respondent.

BRITTAIN, J.—The defendant appeals from a judgment foreclosing the lien of a street assessment on her four lots in Oakland.

The assessment proceedings were under the Street Improvement Act of 1911 as originally adopted. The work was grading, curbing, macadamizing, and guttering one block on Brooklyn Avenue, between Lake Shore Boulevard and Newton Avenue, one block on Wesley Avenue, between Lake Shore Boulevard and Newton Avenue, and the crossing formed by the intersection of Brooklyn, Newton, and Wesley Avenues, in the city of Oakland. Newton Avenue and Lake Shore Boulevard are approximately parallel, and Brooklyn Avenue connects them, running at right angles to Newton Avenue. Wesley Avenue runs diagonally across an imaginary square, two sides of which are formed by the lines of Newton Avenue and Brooklyn Avenue, extended, the other sides being represented by lines parallel to the two extended lines. The crossing formed by the intersection of the three avenues is represented by the triangle formed between the sides of Newton Avenue and Brooklyn Avenue, extended, and the lower diagonal side of Wesley Avenue. The total cost of the work, with expenses, was $5,400.50, of which $1,630.90 represented the cost of the work on the block on Brooklyn Avenue; $1,795.99, the cost of the work on the block on Newton Avenue, and $1,855.28, the cost of the work on the crossing.

In the resolution of intention to do the work it was declared that it was of more than local or ordinary public benefit and that the expense should be chargeable upon a district. The district included seven entire blocks and parts of four other blocks. The blocks were not uniform in size nor shape. No part of the district extended across Lake Shore Boulevard. The work done was in the southwest corner of the district, the improved portions of Brooklyn

Avenue and Wesley Avenue abutting on the westerly boundary of the district. In the entire district there were 162 lots, of which 23 or 24 fronted on the work. Many of the lots, by reason of the diagonal direction of Wesley Avenue, were small and of irregular shapes. Four of the lots of full size and rectangular in shape belong to the appellant. Two of them face Lake Shore Boulevard and two of them face Wesley Avenue. They extend lengthwise on both sides of the entire block of Brooklyn Avenue, which was improved. The appellant's two lots fronting on Wesley Avenue also abutted on the crossing.

After the work was done the assessment was made, and the appellant's lots were assessed, respectively, $419.96, $509.69, $442.19, and $576.27, aggregating $1,948.11. Of the 162 lots in the district, only four, those belonging to the appellant, were assessed for more than $276; twenty-seven for sums between ten dollars and one hundred dollars, the remainder for sums under ten dollars, of which forty were assessed for but one cent apiece. The appellant claims the assessment is void, and to show its invalidity relies upon three propositions: First, that the district established by the resolution was ignored and disregarded by the superintendent of streets, who, it is claimed, in excess of his jurisdiction, imposed a frontage system of assessment; secondly, that the assessment appears on its face to be without uniformity and regardless of benefit; and, lastly, that the assessment upon each of the appellant's four lots is confiscatory.

The complaint is in the ordinary form in such cases. In her answer the defendant denied the essential allegations of the complaint and set forth the assessment, alleging that it "was without reference to, disproportionate to, irrespective of and contrary to any or all benefits received or to be received by each of said lots or portions thereof," and that "said purported assessment was and is disproportionately, unequally, and unjustly placed upon the various lots or portions of lots or subdivisions of land mentioned in said diagram and purported assessment, without regard to the district declared to be benefited in said resolution of intention of the city council, and that said assessment was and is without uniformity and is confiscatory, and void." The findings negatived the appellant's allegations of fact, and support the conclusions of law.

While the usual number of cases is cited in the appellant's briefs, her reliance is chiefly placed upon the decision of the supreme court in *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24, [L. R. A. 1918E, 197, 148 Pac. 217]. In that case in declaring an assessment void a statement of Mr. Justice Redfield of the supreme court of Vermont was quoted as follows: "We have no doubt that a local assessment may so transcend the limits of equality and reason that its exaction would cease to be a tax or contribution to a common burden and become extortion and confiscation. In that case it would be the duty of the court to protect the citizen from robbery under color of a better name." (*Allen* v. *Drew,* 44 Vt. 174.)

In the Los Angeles case it appeared that the city of Los Angeles, having determined to widen one of its streets, condemnation proceedings were prosecuted to judgment to take a strip five feet wide from the lots fronting on either side of the street. The judgment in favor of the lot owners aggregated something over two hundred and twenty-six thousand dollars, of which twenty thousand dollars was awarded to the owner of one lot, which may be designated the Hamberger lot. Under the Los Angeles charter the duty of levying the assessment for the cost of the improvement rested in the board of public works. In its original assessment it charged the remainder of the Hamberger lot with $12,794.10. Protests against the assessment having been made, the city council adopted a recommendation of its street committee that the assessments on the lots fronting on the widened street should be the same in amount as that allowed in the condemnation proceedings, and that surplus costs of the improvement should be levied in accordance with the front-foot rule upon all the lots in the assessment district. The board of public works was directed to make a new assessment, which it did in accordance with the recommendation of the committee. In transmitting the new assessment the board of public works expressed its opinion that the original assessment was correct, and called attention to the fact that under the new method certain lots which received larger benefits than others were assessed for smaller amounts. Protests against the second assessment were overruled by the council. The court determined that the reassessment was not even a *quasi*-judicial act of the board intrusted

with the duty of making the assessment. The defense was that the property owners had had their day in court before the city council and the action of the council in overruling their protests, in the absence of fraud, should be held conclusive. Citing *Chase* v. *Trout*, 146 Cal. 350, [80 Pac. 81], and other cases in the opinion, the supreme court said the record "furnishes convincing evidence that the assessment was ordered prepared without the slightest exercise of judicial discretion, and so unwarrantedly, arbitrarily, and unjustly, as to work a confiscation of the property and to be, therefore, in no legal sense an assessment at all." (*Spring Street Co.* v. *City of Los Angeles*, 170 Cal. 32, [L. R. A. 1918E, 197, 148 Pac. 220].)

[1] In neither the briefs in this case nor in the opinion in the Los Angeles case is the phrase "due process of law" used. The facts in the Los Angeles case and the language used by the supreme court clearly show that the determination was based upon the rule that property of the individual shall not be taken without due process of law. The purpose of the constitutional guaranty is to exclude arbitrary power from every branch of the government. It is a restraint upon the legislative, executive, and judicial departments. (*State* v. *Guilbert*, 56 Ohio St. 575, [60 Am. St. Rep. 756, 38 L. R. A. 519, 47 N. E. 551]; *Ulman* v. *Baltimore*, 72 Md. 587, [11 L. R. A. 224, 20 Atl. 141, 21 Atl. 709]; *Chicago etc. R. Co.* v. *Chicago*, 166 U. S. 226, [41 L. Ed. 979, 17 Sup. Ct. Rep. 581, see also, Rose's U. S. Notes].) In the Los Angeles case the property owners were within the constitutional guaranty.

In the case of *Beck et al.* v. *Ransome-Crummey Co., post*, p. 674, [184 Pac. 431], in discussing the application of the rule of due process of law, this court, for the purpose of illustration only, referred to the analogy between the steps necessary for a municipal corporation to acquire jurisdiction to order the performance of public work, the cost of which is to be made chargeable upon private property, and the steps necessary to be taken to vest jurisdiction in a court to proceed to hear and determine a civil cause. In considering the question of the erroneous, arbitrary, or fraudulent exercise of jurisdiction the analogy is no less illustrative of the principles involved.

[2] After the court acquires jurisdiction of the defendant and subject matter of a particular case, it may proceed to judgment. So long as the judgment is one within the general power of the court extending over all similar cases, and within the issues of the particular case, the judgment, when it shall have become final, is conclusive upon the parties and in regard to all matters adjudged, regardless of any error on the part of the court. It may be attacked for fraud by a suit in equity in which the burden of both pleading and proving the fraud rests upon the complainant. (*United States* v. *Throckmorton,* 98 U. S. 61, [25 L. Ed. 93] ; *Patterson* v. *Colorado,* 205 U. S. 454, [10 Ann. Cas. 689, 51 L. Ed. 879, 27 Sup. Ct. Rep. 556] ; *Central Land Co.* v. *Laidley,* 159 U. S. 103, [40 L. Ed. 91, 16 Sup. Ct. Rep. 80, see, also, Rose's U. S. Notes].)

[3] If there is fraud, or arbitrary action in excess of the jurisdiction of the court, either may be shown in a proper proceeding, unless the injured party has waived his rights by consent to the act or in some other way. These rules apply as well to assessment proceedings as to judgments of courts.

[4] The guaranty of the right to be heard does not necessarily require a determination in a court proceeding. The individual may be fully protected by an opportunity given to present to the local governing body his objections to an assessment such as is involved in this case. Its decision, in the absence of fraud, or arbitrary action amounting to fraud, may be as conclusive as the judgment of a court in a civil action. (*Lambert* v. *Bates,* 137 Cal. 676, .[70 Pac. 777].) In the Los Angeles case an appeal was made to the council and its action in sustaining the assessment which it had procured to be made was so gross and arbitrary an action as to amount to fraud. [5] In the present case the appellant did not appeal from the action of the superintendent of streets, who levied the assessment, to the city council. Fraud is never to be presumed. It cannot be assumed that if the defendant had just cause of complaint the council would not upon appeal have ordered the assessment corrected. In the Los Angeles case the assessment was made without any exercise of official discretion, and the council arbitrarily refused to protect the property owner. In this case the dis-

cretion of the superintendent of streets was exercised, per-
haps erroneously, but the property owner did not seek the
protection of the council.   In effect, she permitted a default
judgment to be entered against her by a tribunal having
jurisdiction of her cause.

. [6]  On the trial, over the objection of the plaintiff, evi-
dence was received showing that the appellant's four lots
were assessed for taxes in the aggregate of $1,650.   Evidence
was also introduced showing that the superintendent of
streets levied the assessment upon the lots by the exercise
of a discretion in a manner which may have been erroneous
but which involved the examination and determination of
the comparative benefits he believed would flow to the re-
spective lots by reason of the work.   This examination and
determination was essentially judicial in its nature.   If
either his method or conclusions were erroneous, the statute
furnished a means for the property owners to protect them-
selves.   At any time within thirty days after the date of the
warrant issued upon the making of the assessment, the owners
aggrieved may in writing state their objections to the assess-
ments.   Thereafter, and upon notice, the council is required
to hear such objections and may remedy and correct any of the
acts or determinations of the superintendent of streets, con-
firm, amend, set aside, alter, modify, or correct the assessment
in such manner as to it shall seem just, directing the super-
intendent of streets to correct the warrant, assessment, or dia-
gram in any particular or to make and issue a new warrant,
assessment, or diagram to conform to the decision of the
council.   All decisions and determinations of the council
upon notice and hearing in this regard are made final and
conclusive upon all persons entitled to appeal under the pro-
visions of the section as to all errors and irregularities which
the council might have avoided or remedied or which it can
then remedy.   The section continues: "No assessment, war-
rant, diagram or affidavit of demand and nonpayment, after
the issue of the same, and no proceedings prior to the assess-
ment, shall be held invalid by any court for any error, in-
formality, or other defect in the same," where the resolution
of intention shall have been passed and posted in such man-
ner as to give the council jurisdiction to order the work to
be done.   (Street Improvement Act of 1911, sec. 26, Stats.

1911, p. 745.) [7] If an appeal to the council had been made and it had fraudulently or arbitrarily affirmed an erroneous assessment or had refused the property owner a hearing, the courts would have been open for a direct attack on the action of the council, or on suit being brought to enforce the assessment, the rule in the Los Angeles case might have been applied. In this case it does not appear from the face of the assessment that it was void, or not in entire accord with the law. It was sought to show by the evidence on the trial that the superintendent of streets erred in his judgment. This evidence would have been proper and might have been conclusive upon an appeal to the council. The fact that it was relied upon here shows the assessment was not void on its face, else it would have been unnecessary in support of the appellant's position. The case is akin to one where a collateral attack is made on a judgment regular on its face. If in a suit in ejectment the court should give such a judgment as could only be given in a suit in unlawful detainer, the judgment would be void because of matters appearing on the face of the record. If, in such a case, a judgment was entered regular on its face, after it became final it could not be invalidated by evidence that the court had mistaken the facts or misapplied the law.

The defaulting defendant in a civil action, after his property has been taken on execution of a judgment regular on its face and rendered after jurisdiction had been perfected, could not be heard in a federal court to say the taking was in violation of the provisions of the constitution of the United States regarding due process of law. To support such a suit it would be necessary for the plaintiff to allege and prove that he was not in default, and that the judgment was invalid by reason of fraud or such a gross abuse of judicial power apparent on the face of the record as to amount to fraud. [8] Similarly, if a property owner, having a right to defend against an erroneous assessment for work ordered after jurisdiction has been established, fails to assert that right in an administrative tribunal which is vested with power to correct the error, he may not be heard, either as a plaintiff or defendant, in any litigation involving the assessment, to assert its invalidity, without showing either fraud or the exercise of arbitrary and harmful power on

the part of the administrative tribunal.  **[9]**  As the viola-
tion of the law by a referee to take evidence would not in-
validate a judgment entered by a court on his report, neither
would an erroneous, arbitrary, or even a fraudulent assess-
ment render it void after the council approved it, either
actually upon hearing or impliedly because no protests were
made.  The failure to protest to the council in the one case
has the same effect as the failure to object to the referee's
report in the other.  The law helps those who are vigilant.
Silence under such circumstances amounts to a consent to
the act.  (Civ. Code, secs. 3515, 3516.)  It is possible a case
may arise where an appeal to the council from the nature
of things might be futile and the assessment void, as, for
instance, if an assessment should be levied to pay for work
not included within the resolution, or to pay for work which
had never been done, but no such conditions confront the
court in this case.

**[10]**  The mere fact that the amount assessed against the
appellant's four lots, situated as they are, exceeded the
amount at which they had theretofore been appraised for
taxation does not necessarily lead to the conclusion that the
assessment was confiscatory.  In support of the regularity
and honesty of the action of the municipal authorities and
of the judgment of the trial court, it might well be presumed
that the improvement in the block, in which the appellant's
four lots occupied the entire frontage on both sides of the
street, and the improvement in the crossing, upon which
two of the appellant's corner lots abutted, so benefited them
as to warrant an increased valuation more than equal to the
amount of the assessment to be placed upon them.  It is
not necessary for the determination of this appeal to rest
the decision upon any inferences in support of the judgment.
The appellant, by reason of her failure to appeal to the
local council for the correction of the assessment, neither
pleaded nor proved facts sufficient to warrant a judgment
in her behalf.  Because of this failure of both pleading and
proof in the matter essential to support a judgment adverse
to the assessment, the evidence concerning the method in
which the superintendent of streets exercised the function
intrusted to him and the evidence in regard to the assessed

42 Cal. App.—43

valuation for taxation purposes of the appellant's lots had no considerable weight.

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 9, 1919.

Shaw, J., Melvin, J., Lawlor, J., and Wilbur, J., concurred.