## ATCHISON, T. & S. F. RY. CO. v. CITY OF SAN DIEGO et al.

District Court, S. D. California, Central Division. August. 27, 1929.

Robert Brennan, E. T. Lucey, and M. W. Reed, all of Los Angeles, Cal., for complainant.

M. W. Conkling, City Atty., and C. L. Byers, Asst. City Atty., both of San Diego, Cal., for defendants.

JAMES, District Judge. This suit is brought to secure, as the main relief, an injunction to prevent the city of San Diego and its officers from enforcing an assessment charge made against the depot property of complainant railway company. The assessment was levied to cover in part the cost of opening C street in said city, through the length of one block. The total cost of the work was determined to be $54,565.83. Of this sum, $12,607.12 was made a charge against the depot property. The railway company protested the assessment as being unjust and arbitrary, claiming that its property would receive no benefit from the opening of the street. The city council overruled the protest and this action was commenced. The improvement designed to be made was under a district assessment plan.

The Street Improvement Act of the State of California, under which, it is asserted, the

city proceeded (sections 4, 5, p. 70, Stats. of Cal. 1889, and amendatory acts [Deering's Gen. Laws 1923, Act 8195]), provides for the hearing of objections to the proposed work and to the assessments made, and declares that the decision of the city council allowing or disallowing protests "shall be final and conclusive" (section 5). It is admitted by defendants that the finality which attends the determination of the city council, when it acts upon the protest of a property owner, assumes cases where that body acts within a fair and reasonable discretion upon the matter before it (which is presumed, prima facie), but that the protestant is not concluded if he is able to show that no fair rule of uniformity was adopted in making the assessment (Schaffer v. Smith, 169 Cal. 764, 147 P. 976), or that the assessment was made without regard to benefits to accrue to the property taxed (Spring Street Co. v. City of Los Angeles, 170 Cal. 24, 148 P. 217, L. R. A. 1918E, 197).

The question to be answered in such cases is: Did the municipal body use the judicial judgment which the law requires of it, and determine the amount of the assessments upon the basis of benefits to property assessed? Where it is plain that the council, upon a showing of valid supporting facts, has ruled that benefits will accrue to the property assessed to pay the cost of the work, that determination may not be overthrown by witnesses produced in court who testify that the assessment is for too large an amount. The law has established the agencies which shall settle the question of the amount of damages and benefits: First, the commissioners appointed for that purpose; second, the municipal council with full power to revise, correct, and annul the commissioners' report. Counsel for defendants have cited a number of California decisions on the question, all showing the limited power which the courts have in these matters. There is no real difference between respective counsel as to the law.

■ An assessment of the kind here to be considered will be deemed arbitrary and illegal, if, upon examination of the record of proceedings had, together with other evidence offered to show fully plain conditions which the assessing officers are presumed to have had before them, the conclusion is inescapable that the property assessed could not be benefited by the contemplated work, or that, if benefited, the benefit necessarily would be trivial or inconsequential. Complainant maintains that in the situation its property is, and considering the limited use to which it can be put, no benefit whatsoever would accrue to it—rather that a damage would be suffered.

The depot property as occupied faces toward the south and east, with full access at its southerly line to Broadway, the main east and west street leading from the principal business center of San Diego to the bay and steamer piers, to which the depot itself is in close proximity. The depot building has a frontage of 225 feet facing Broadway. Its easterly side, with appurtenances, extends along Kettner boulevard (which intersects Broadway at right angles) for substantially the entire distance from Broadway to B street. Kettner boulevard proceeds northerly, across numerous east and west streets, after intersecting with B street. B street, like the many east and west streets, extends completely across town. C street is one of these east and west streets, and is located midway between B street and Broadway, being parallel with both. It ends at its westerly part as it enters India street, which is parallel with Kettner boulevard and 200 feet distant therefrom. It was to project C street through the block of land intervening between India and Kettner boulevard that the opening proceeding was commenced. As a result of that proceeding, a rectangular block of land was contemplated to be taken by the city which would form the extension of C street at a width of 75 feet, opening C street into Kettner boulevard directly opposite the central portion of the depot property. No part of the latter's property was planned to be taken, for the improvement work did not cross Kettner boulevard. The assessment district as prescribed by the city council began a distance of nine blocks east of India street, the north and south lines bounding the district being parallel with and included property for a depth of 50 feet on both sides of C street. The lines of the district were continued across Kettner boulevard so as to include of the depot property of complainant a rectangle dimensioned 225 by 180 feet. The assessment district there ended.

■ The state law authorizing the segregating of the property of a limited number of taxpayers within a district, and placing the cost of improvement work, the use of which will be equally shared in by the general public, as a charge upon the property within the district, rests, as the Supreme Court of California said in Spring Street Co. v. City of Los Angeles, supra, upon the compensating benefit resulting to the included property as "its sole warrant."

■ The railway company acquired the depot property through conveyances which required as a condition that a union depot be continuously maintained thereon. Forfeiture of the rights granted was provided to result upon a breaking of the condition. The improvements made and the exclusive railroad use to which the property has been and is being put, very definitely fix that use as a permanent one. The probability that the owner of the depot lands will continue indefinitely to use them for the purpose required is much stronger and more reasonable than that that use will be abandoned and the property allowed to revert. City of Oakland v. Schenck, 197 Cal. 456, 241 P. 545; Southern P. R. Co. v. S. F. Savings Union, 146 Cal. 290, 79 P. 961, 70 L. R. A. 221, 106 Am. St. Rep. 36, 2 Ann. Cas. 962. Only in the latter event can the land acquire value for general commercial purposes.

The proposed opening of C street does not touch either side of the depot property. The depot now has access furnished on its southerly side from Broadway and along its easterly side from Kettner. Already B street, at the maximum of 300 feet from the easterly center line of the depot, furnishes a way for traffic to enter or depart to or from Kettner. The block lengths in the city are short, none exceeding 300 feet. It would seem to be beyond denial that if Kettner were a private way, and the railroad company were allowed the exclusive use of it as far as B street, for loading purposes, passenger and express, its interests would be advanced. Any condition which would divert general traffic, having no business at the depot of complainant, from Kettner, would facilitate the handling of the railroad business, both as to the railroad itself and the public who make use of its service. With as ample means of ingress and egress as could be desired already enjoyed by it, quite apparent it is that any change in conditions which will have the effect of increasing general traffic along the depot frontage on Kettner boulevard can be of no conceivable benefit to the railroad, but rather a detriment. The greater the general traffic, the greater the obstruction to complainant's business. The opening of C street will not only bring into Kettner a new line of miscellaneous traffic, but will create a corner turning point directly opposite that side of the depot used by cabs and vehicles brought there on business with the railroad. How this condition could result in advantage to complainant, or enhance the value of the property for railroad uses, cannot reasonably be explained. This conclu-

sion results from a consideration of fixed conditions, all necessarily apparent, as a fact and by presumption, to the street opening commissioners and to the municipal council.

■ The second contention made by complainant need be given but brief notice. It appears that after all of the proceedings had been taken by the city in the matter of creating the special assessment district, and the commissioners appointed to assess damages and benefits had filed their report, complainant deeded to the city a strip of land 13.45 feet wide along the easterly line of its property on Kettner boulevard. It is claimed that, because the city council did not, in confirming the report of the commissioners, make a deduction in the amount of the assessment levied against the railroad property, the entire assessment became void. Considering that in the assessment proceedings the property was correctly described at all times and that complainant did not specifically ask the council for a deduction on account of the transfer of the strip, it would seem that the assessment should not be held invalid for the reason last assigned.

Decree will be in favor of complainant, with costs.