## WOLF v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7504.

Circuit Court of Appeals, Ninth Circuit.
May 6, 1935.

Melvin D. Wilson, of Los Angeles, Cal., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Edward H. Hammond, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

Petitioner seeks to review the action of the Board of Tax Appeals in sustaining the Commissioner of Internal Revenue in the inclusion in the gross income of the petitioner of the sum of $18,349 as taxable gain due to the appreciation in value of a strip of land taken by the city of Los Angeles for the opening of Ivar avenue in 1929 from a lot owned by the petitioner. Petitioner's lot, which was 103 feet wide, fronting on Cahuenga avenue, and 383 feet deep, was acquired in 1920 at a cost of $21,000. The strip condemned by the city was 70 feet wide, running diagonally across the petitioner's lot, and the area taken represented 20 per cent. of the total area of the lot. The respondent fixed the amount received from the portion condemned as $23,549, and the costs thereof at 20 per cent. of the total cost of the lot ($4,200), and treated the difference, $19,343, less the fees paid an attorney employed in connection with the condemnation proceeding ($1,000), as the taxable gain, $18,349. In the condemnation proceeding brought in the superior court in pursuance of the preliminary proceedings of the city of Los Angeles under the Street Opening Act of California of 1903 (Cal. Stat. 1903, p. 376 as amended), looking to such condemnation, the decree awarded to the petitioner $10,267 for buildings taken, $23,549 for the land taken, and $4,006 as severance damage to the portion of the lot not taken. After the decree of condemnation an assessment was levied upon all the property within the assessment district to secure the amount necessary to pay for the property taken (section 17, Cal. Street Opening Act [St. 1903, p. 380] supra). The amount assessed against the balance of the lot retained by the petitioner was $38,713.-16 which was $891.60 more than the total amount awarded to the petitioner by the condemnation decree. Under the statute authorizing condemnation owners whose property was taken and who also were assessed for benefits, were permitted to offset the award made to them against the benefit assessed against them (section 21, Cal. Street Opening Act [St. 1903, p. 381] supra). In pursuance of this statutory authority for offset, the petitioner paid $891.60 and authorized the application of the condemnation award ($37,822) to the amount of the assessment ($38,713). The petitioner contends that the transaction by which a part of his lot was taken for the opening of a street and the balance of the lot was assessed for the benefits resulting from such opening, should be treated as one transaction. It should be noted that the benefits assessed against the two parcels of the lot remaining after the taking of his property did not include the cost of improving the street, and that subsequently the street was improved by paving, sidewalks, storm drains, etc., and the remaining parts of the land were assessed therefor $1,317.20 and $1,315.55, respectively.

The government's contention that when the petitioner authorized the application of the condemnation award to the assessment against his lot for benefits he realized as a taxable gain the difference between the pro rata cost of the strip taken and the amount awarded by the decree of condemnation as the value of the strip thus taken, and that by such application he increased the cost to him of the remaining portions of the lot by the amount of the award applied to the payment of the assessments to be allowed as a part of the cost in determining the taxable gain from such sale when and if he sells the latter at a profit. This argument is predicated in part upon the proposition that the

owner of the lot could have collected the amount of the award in the condemnation suit and allowed the assessments upon this lot to stand, the lien to be evidenced by a bond constituting a lien upon the remaining parts of the lot issued by the city payable in ten annual installments. The provisions of the law authorizing such a bond are cited in support of the contention, but are only applicable where in the proceedings an ordinance or resolution of the city permitted such issuance of bonds. Cal. Stat. 1921, pp. 579, 580, § 2. No such resolution or ordinance is shown. However that may be, it is clear that the entire proceeding for the opening of a street is one proceeding, and the result should be treated as an entirety. This was the view of the Supreme Court of California expressed in considering a somewhat similar situation under the same street opening act in the case of Spring Street Co. v. City of Los Angeles, 170 Cal. 24, 148 P. 217, 218, L. R. A. 1918E, 197, wherein a parcel of land was awarded $20,000 and assessed $20,115.20 to pay for the property thus taken. This transaction was treated as a unit for the purpose of determining whether or not there had been an infringement of the constitutional rights of the owner of the land. The court there said: "Specifically, upon the property of the Hamburger Realty & Trust Company is imposed an assessment of $20,000, in cancellation of the judgment of the court of the value of its property taken for this public use, and $115.20 being its proportionate share of the expense to which the city was put in the doing of this thing. Thus, in practical effect, while real property of the plaintiff to the value of $20,000, as found by the court, is taken away from it for public use, and while the Constitution of the United States and of this state declares that this cannot be done without compensation to the owner, this plaintiff not only receives no compensation, but in addition to the loss of its property is compelled to pay $115.20 because the city has seen fit to take it. Thus plaintiff would have saved $115.20 if, upon the first intimation that the city designed to condemn its property under the laws of the land, it had hastened to make the city a free gift of it."

In this view the petitioner was paid nothing whatever for the land taken, and in addition he was required to pay $891.60, which was the net result of the entire transaction so far as he was concerned. The gain, if any, derived by the taxpayer from the transaction was in the increased value of the property already owned by him. This increase is not a taxable gain.

The petitioner cites the decision of the Circuit Court of Appeals of the Second Circuit in Carrano v. Commissioner, 70 F.(2d) 319, 321, dealing with a somewhat similar situation where there was a taking of property and assessment of benefits upon the balance of the property not taken. The values, however, were different. That court, speaking through Judge Learned Hand, said: "In this instance the 'gain' in dispute could arise only on the hypothesis that so much of the award as paid the assessment was received before the assessment itself was paid. This was demonstrably not the case; it was received at the same time. Thus it does not affirmatively appear to be a taxable 'gain' at all, and the taxpayer wins. Moreover, this is the direct and natural way to look at the transaction. The taxpayer has 'gained' only what he has received above his cost; so far as his award has been cancelled by the assessment, it is not a 'gain' at all, it is instantly absorbed by a new cost which arises and is paid without allowing him even a momentary possession of the 'gain.'"

We conclude that there was no taxable gain in the case at bar, and the order of the Board of Tax Appeals is reversed.

Reversed.