[Civ. No. 640. Fifth Dist. July 22, 1966.]

DONALD E. HALSTED et al., Plaintiffs and Appellants, v. COUNTY OF SACRAMENTO et al., Defendants and Respondents.

Benjamin D. Frantz for Plaintiffs and Appellants.

John B. Heinrich, County Counsel, for Defendants and Respondents.

CONLEY, P. J.—Donald E. Halsted and Ann Halsted, his wife, are land owners in the Strong Ranch Slough Drainage Assessment District in Sacramento County. Believing that the board of supervisors was guilty of arbitrary action and abuse of discretion in approving an assessment against them of approximately one-fourth of the total cost of construction of the Bell Avenue bridge, under the Improvement Act of 1911 (div. 7, Sts. & Hy. Code), the plaintiffs filed a suit against the county, the board of supervisors, the department of public works, the county engineer, the county treasurer, and the Lentz Construction Co., Inc., the organization that built the bridge, praying for a judgment setting aside and annulling the purported assessment and enjoining the collection thereof. The case never reached the evidence stage, as the trial court sustained a demurrer to the complaint without leave to amend, on the ground that the pleading ''. . . does not and cannot state facts sufficient to constitute a cause of action.''

A memorandum opinion indicates the trial judge's reason for this terminal order; in the absence of fraud or mistake, he said, the action of the board of supervisors could not be

attacked in court, and ". . . the complaint cannot state a cause of action unless fraud is charged therein" and "since counsel for plaintiffs declines to so charge the County . . . the County's demurrer must be sustained without leave to amend." A judgment incorporating the ruling and holding that plaintiffs take nothing by their complaint was entered and the appeal followed.

It should be kept in mind that this controversy was decided purely on the pleadings without giving the trial court or this court the benefit of a consideration of any evidence. Upon hearing all of the facts, a trial court may conceivably reach the same conclusion as that presently arrived at; but such a final determination would be based in part, at least, on the evidence and not wholly on the theory which the plaintiffs are legitimately trying to express in their pleading. After a close examination of the claims of plaintiffs, we conclude that the court properly sustained the demurrer, but that the plaintiffs should be permitted to amend their complaint; for, if they are allowed to do so, the plaintiffs may well sponsor an amended pleading which can properly withstand a demurrer.

While the Code of Civil Procedure, section 472a, provides only that if a court sustains a demurrer it *may* grant leave to amend, and it is usually said that the privilege of amending "rests in the discretion of the trial court" (*Buckley* v. *Howe,* 86 Cal. 596, 605 [25 P. 132]; *Billesbach* v. *Larkey,* 161 Cal. 649, 653-654 [120 P. 31]; *Spencer* v. *Crocker First Nat. Bank,* 86 Cal.App.2d 397, 400-401 [194 P.2d 775]), the time-honored custom of permitting amendment of an original partially defective pleading has been so enforced in practice that the denial of such permission is now usually found to be an abuse of discretion, except where the impossibility of amendment to state a cause of action is clear. (*Payne* v. *Baehr,* 153 Cal. 441, 447-448 [95 P. 895]; *Hillman* v. *Hillman Land Co.,* 81 Cal.App.2d 174, 181 [183 P.2d 730]; *Plaza* v. *City of San Mateo,* 123 Cal.App.2d 103, 112 [266 P.2d 523]; *Kauffman* v. *Bobo & Wood,* 99 Cal.App.2d 322, 323 [221 P.2d 750]; *Campbell* v. *Veith,* 121 Cal.App.2d 729, 734 [264 P.2d 141]; 39 Cal.Jur.2d, Pleading, § 168, pp. 244-245.)

If the demurrer to a complaint is good it should, of course, be sustained, but in such circumstances it is error to deny plaintiffs the right to amend, if it appears likely from the record that an amendment can be made which would result in a competently stated cause of action. By the rearrangement of a few words in conformity with the appar-

ent intention of the plaintiffs, a legitimate cause of action can be stated, which, if supported by the evidence, could afford the relief sought.

The complaint to cancel the assessment and to enjoin the issuance of bonds alleges that the plaintiffs own the following real property: ''The west one-half of Lot 20 as shown on the plat of 'Swanston Acres' recorded in the office of the county recorder of Sacramento County on May 23, 1922 in Book 16 of Maps, Map No. 53''; that after Sacramento County had established the Strong Ranch Slough Drainage Assessment District, it entered into a contract with Lentz Construction Co., Inc. for making improvements in the district, including the installation of a bridge on Bell Avenue, a public highway. The bridge having been constructed, the clerk of the board of supervisors gave notice that the county engineer had filed in the clerk's office an assessment, together with a diagram and engineer's certificate in the matter of work and improvements for the assessment district, which included plaintiffs' real property (assessment No. 46), and that at 9 a.m. on October 26, 1964, those interested in the work and in the assessment could appear before the board in the meeting room of the supervisors and be heard, if they had any reason to aver why the assessment should not be confirmed. The plaintiffs filed with the clerk a written protest, and also a subsequent written protest through their attorney and authorized agent, Benjamin D. Frantz. These protests alleged that:

''1. It appears that this proposed assessment is 102 percent over and above the estimated cost of such improvement.

''2. It appears that said proposed assessment unlawfully and improperly seeks to charge us for the full cost of the bridge replacements and the entire cost of realigning the channel.

''3. Areas occupied by the drainage facility and existing public streets should be excluded from the acrea [sic] of the parcel to be assessed.

''4. The water and electric lines which cross the westerly bridge have not been properly restored.

''5. The railings on the easterly bridge is [sic] inferior to the previous facility.

6. ''. . . such bridge is of no more special benefit to the west half of lot 20 than it is to any other land in the entire assessment district.''

Copies of these two documents of appeal and protest are incorporated in full as exhibits.

.. .. .

The complaint further states:

"13.

"Except for a house located thereon, said real property owned by said plaintiffs is undeveloped and unsubdivided acreage, and plaintiffs intend that it shall so remain.

14.

"Said Bell Avenue bridge has been constructed either for the direct benefit of a certain subdivision located in the east half of said Lot 20 and in Lot 21 of said Swanston Acres or for the benefit of the public and all persons and properties located in said STRONG RANCH SLOUGH DRAINAGE ASSESSMENT DISTRICT.

15.

"Unless restrained and enjoined herein, said defendants will assess against said real property belonging to plaintiffs the sum of approximately $4,071.83 as one-fourth of the cost of the construction of said Bell Avenue bridge; and such assessment, and every part thereof, is null and void and of no force or effect whatsoever because said property of said plaintiffs is in no way benefited by said Bell Avenue bridge."

It is true that in a complaint of this kind the plaintiffs are restricted to the area of protest previously presented to the board of supervisors. (*Blake* v. *City of Eureka,* 201 Cal. 643, 648-649 [258 P. 945].) In that respect, the complaint in its present state does not conform in strict detail with the protests previously filed with the board; in the board protests, the plaintiffs took the position that their land did not enjoy any special benefit from the construction of the bridge, but that the standing of their real property with respect to benefits was no different from that of all the other land in the assessment district. But, in the complaint it is said that the property of the plaintiffs is ". . . in no way benefited by said Bell Avenue bridge." Consequently, there is a failure to restrict the basic allegations of the complaint to the exact specifications contained in the board protests. However, the rearrangement of a few words in an amended complaint could readily bring the two versions into complete adjustment by the allegation that the property of said plaintiffs is in no way specially benefited by said Bell Avenue bridge, and that the benefits received by the west one-half of Lot 20 of Swanston Acres and by all the other lands within the drainage assessment district are identical.

Referring back to the original appeal before the board of supervisors, it seems clear that the position of the protestants was:

1) That the improvement was not completed in accordance with estimates;

2) That the land of plaintiffs did not enjoy any special benefit and that all real property in the entire assessment district was equally aided by the improvement; and

3) That, consequently, the assessment of $4,071.83, or approximately one-fourth of the total cost of the bridge, as against the plaintiffs constituted an arbitrary act and that the board abused its discretion in approving it.

The trial judge apparently expected citizens who claimed that they had been wronged by an arbitrary assessment to walk a legalistic tightrope, and that the smallest inconsistency in the specification of their grounds of appeal should cause their attempt at legal redress to fall flat. One searches division 7 of the Streets and Highways Code in vain for such a requirement. ■ On the contrary, section 5366 of the Streets and Highways Code specifies only that the appeal for redress to the board of supervisors shall be made ". . . by briefly stating in writing the grounds of appeal." The use of the word "briefly" in the code section indicates to us that the underlying substance of the "objection, appeal or protest" is the important thing rather than the technical wording of the document. The following authorities indicate that "briefly stated protests" are proper in California: *Belser* v. *Hoffschneider*, 104 Cal. 455 [38 P. 312]; *Girvin* v. *Simon*, 127 Cal. 491 [59 P. 945]; *Creed* v. *McCombs*, 146 Cal. 449, 453 [80 P. 679].

■ It should next be noted that the existence of fraud is not the only *sine qua non* for an effective equity suit involving this subject matter. It is clearly stated in *Maxwell* v. *City of Santa Rosa*, 53 Cal.2d 274, at pages 277-278 [1 Cal.Rptr. 334, 347 P.2d 678], that among the types of ". . . legislative activity which will be recognized as a basis for equitable relief, the courts of this state have either intimated or directly held that . . . manifestly or grossly unjust assessment, . . . arbitrary or unreasonable action . . . amounting to an abuse of discretion . . . if pleaded and proved will entitle plaintiff to relief." (See also in this connection *Spring Street Co.* v. *City of Los Angeles*, 170 Cal. 24, 31 [148 P. 217, L.R.A. 1918E 197]; *Hannon* v. *Madden*, 214 Cal. 251 [5 P.2d 4]; *Garibaldi* v. *City of Daly City*, 63 Cal.App.2d 480 [147 P.2d 122]; *Hutchinson Co.* v. *Coughlin*, 42 Cal.App. 664 [184 P. 435].)

Section 5343 of the Streets and Highways Code is as follows: "Immediately after its completion the diagram shall be delivered to the superintendent of streets, who shall immediately, after the contractor has fulfilled his contract to the satisfaction of the superintendent of streets or the legislative body, on appeal, proceed to estimate upon the lots or parcels of land within the assessment district, as shown by the diagram, the benefits arising from such work, and to be received by each such lot or parcel of land. He shall thereupon assess upon and against the lands in the assessment district the total amount of the costs and expenses of such work, and in so doing shall assess the total sum upon the several lots or parcels of land in the assessment district, benefited thereby, in proportion to the estimated benefits to be received by each of the said several lots or parcels of land."

 The foregoing code section makes it the duty of the superintendent of streets to assess on the basis of "benefit" and requires that the assessment must be made "in proportion to the estimated benefits to be received by each of the said several lots or parcels of land." Appellants throughout have urged that the section is inexcusably violated by the apportionment to their half lot alone of approximately one-fourth of the total cost of the construction of the bridge, and that the assessment is so out of proportion to reality that it constituted an arbitrary action and that the supervisors abused their discretion in enforcing the arbitrary assessment.

*Spring Street Co.* v. *City of Los Angeles, supra,* 170 Cal. 24, 31, held that a similar assessment was invalid because the record substantiated the fact that no effort had been made to assess in "proportion to benefits."

In *Dumas* v. *City of Sunnyvale,* 231 Cal.App.2d 796, 799-800 [42 Cal.Rptr. 302], the assessment was held improper because the city council had established a policy of charging back to land owners within an assessment district 75 percent of the value of the property taken from them in connection with the proposed improvement; the assessment was invalid because it was adopted without regard to special benefits conferred and was based on an "arbitrary fixed policy."

In *Federal Constr. Co.* v. *Ensign,* 59 Cal.App. 200, 209-210 [210 P. 536], it is said: "Special benefits to the property to be assessed, that is, benefits received by it in addition to those received by the public at large, is the equitable and just foundation upon which local assessments rest; and under our system of government no assessment can be made upon any

land on any principle other than that of special benefits actually or presumptively received. The elements which an improvement must possess in order to justify a local assessment based on the theory of benefits are certainly two in number, and possibly three. The first is that the improvement must be a public one; that is, it must be one which confers a general benefit upon the public at large, and which, therefore, the public, acting through its government, may construct without the consent of the particular individuals affected. An improvement which lacks this element is essentially a private improvement; and no matter how useful or advantageous it may be to the owners of private property, the public cannot compel its construction, nor can it pay for it by funds raised by the exercise of the sovereign power of taxation. (*Spring Street Co.* v. *City of Los Angeles*, 170 Cal. [24] 30 [148 P. 217, L.R.A. 1918E 197] ; 1 Page and Jones on Taxation by Assessment, sec. 283.) The second element essential to a valid local assessment is that the improvement must confer an especial and local benefit upon the property which is to be assessed. It is possible that it will suffice if, from the nature of the work, the property can be *presumed* to have received an especial benefit.''

▮ We conclude:

1) That the plaintiffs appealed the assessment to the board of supervisors on the ground that it was arbitrary and constituted an abuse of discretion, and, on the same ground, they now seek relief from the denial of redress by the board of supervisors;

2) That the basis of a legal assessment in the circumstances disclosed by the record was the amount of special benefit which plaintiffs' land received from the construction of the improvement;

3) That, while the allegations of the complaint do not presently conform exactly with the explicit grounds of attack stated in the appeal protests filed with the board of supervisors and that, therefore, the sustaining of the demurrer was proper, the viewpoint of plaintiffs throughout is nevertheless clearly enough indicated so that it was error on the part of the court to forbid the filing of an amended complaint.

Consequently, the judgment is reversed, and the trial court is directed to set aside that portion of the order which denies leave to amend the complaint, and to add to the order sustaining the demurrer the following words: ''. . . with leave to

amend the complaint within ten days after service upon plaintiffs' counsel of notice of the ruling as modified.''

Stone, J., and McMurray, J. pro tem.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 14, 1966.

―――――

*Assigned by the Chairman of the Judicial Council.